**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHAQUILLE PRINCE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-7265 |
| | ) | |
| vs. | ) | |
| | ) | Honorable Robert W. Gettleman |
| SGT. MICHIENZI #357, et al., | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES**
**TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COME the Defendants, MICHAEL MICHIENZI, TOM DORSEY and VILLAGE

OF ROMEOVILLE, by and through their attorneys, MICHAEL D. BERSANI and G. DAVIS

MATHUES of HERVAS, CONDON & BERSANI, P.C., and for their Answer and Affirmative

Defenses to Plaintiff's First Amended Complaint, state as follows:

1.      This is an action for money damages brought pursuant to 42 U.S.C. § 1983 and the

laws of the State of Illinois to address deprivations of Plaintiff's rights under the Constitution of the

United States and the State of Illinois.

**ANSWER:      The Defendants admit that this case is brought for money damages pursuant
to 42 U.S.C. § 1983. The Defendants deny that Plaintiff's rights were violated.**

2.      On December 21, 2018, Plaintiff went to the Romeoville Police Department

("Department") to file a complaint against a Romeoville police officer for prior police misconduct

and to retrieve the results of a Freedom of Information Act ("FOIA") request.

**ANSWER:      Defendants admit that Plaintiff was present at the Romeoville Police
Department on December 21, 2018, but lack sufficient knowledge or
information as to the truth of the remaining allegations contained in
Paragraph 2 of Plaintiff's First Amended Complaint.**

3.      After Plaintiff left the Department, Defendant Michienzi followed Plaintiff with his weapon drawn.  Defendant Michienzi came up from behind Plaintiff and ordered him to strip off his clothing, battered Plaintiff, and forced Plaintiff back to the Department.

**ANSWER:      Defendants admit that at some point Michienzi followed Plaintiff. The Defendants deny the remaining allegations in paragraph 3 of Plaintiff's First Amended Complaint.**

4.      Defendant Michienzi charged Plaintiff with resisting a peace officer, which was later dismissed.

**ANSWER:      Defendants admit that Plaintiff was charged with resisting a peace officer and that charge was later dismissed *nolle prosequi*. The Defendants deny the remaining allegations in paragraph 4 of Plaintiff's First Amended Complaint.**

5.      Plaintiff was the victim of unlawful retaliation and excessive force, and it is for this reason and the reasons set forth below that Plaintiff now seeks relief from Defendants.

**ANSWER:      The Defendants deny the allegations in paragraph 5 of Plaintiff's First Amended Complaint.**

6.      This is an action for money damages brought pursuant to 42 U.S.C. § 1983 and the laws of the State of Illinois to address deprivations of Plaintiff's rights under the Constitution of the United States and the laws of State of Illinois.

**ANSWER:      The Defendants admit that this case is brought for money damages pursuant to 42 U.S.C. § 1983. The Defendants deny that Plaintiff's rights were violated.**

7.      Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on 42 U.S.C. §1983 and questions of federal constitutional law. Supplemental jurisdiction over Plaintiffs' [*sic*] state law claims is pursuant to 28 U.S.C. §1367.

**ANSWER:      The Defendants admit the allegations in paragraph 7 of Plaintiff's First Amended Complaint.**

8.      Venue is proper under 28 U.S.C. §1391(b) in the Northern District in that the events and conduct complained of herein all occurred in the Northern District.

**ANSWER:** **The Defendants admit the allegations in paragraph 8 of Plaintiff's First Amended Complaint.**

9.  Plaintiff Shaquille Prince is a citizen of the United States and resides in the Northern District of Illinois.

**ANSWER:** **Defendants have insufficient knowledge and information to form a belief as to the truth of the allegations contained in Paragraph 9 of Plaintiff's First Amended Complaint.**

10.  Defendant Michienzi and Defendant Dorsey, were, at all relevant times herein, employees of the Department. They engaged in the conduct complained of while on duty and in the course and scope of their employment under color of law.

**ANSWER:** **Defendants admit that at all relevant times Michienzi and Dorsey were employees of the Village of Romeoville, on duty, and acting in the scope of their employment and under color of law. Defendants deny they committed the conduct complained of and deny the remaining allegations in Paragraph 10 of Plaintiff's First Amended Complaint.**

11.  At all relevant times, Defendant Village of Romeoville, an Illinois municipal corporation, was the employer and principal of the individual Defendants, who acted pursuant to its policies and practices.

**ANSWER:** **Defendants admit the allegations in Paragraph 11 of Plaintiff's First Amended Complaint.**

7.  [*sic* as to the numbering in all remaining paragraphs] Throughout 2018, Plaintiff submitted multiple FOIA requests to the Department to retrieve body cam and dash cam footage from a January 25, 2018 incident, wherein Plaintiff was assaulted and battered by an officer of the Department.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 7 of Plaintiff's First Amended Complaint.**

8.  On December 21, 2018, Plaintiff's friend, who will hereinafter be referred to as Individual A, drove Plaintiff and herself to the Department to retrieve the results of this FOIA request.

**ANSWER:** **Defendants admit that on December 21, 2018, Plaintiff and Selena Anderson were present at the Romeoville Police Department. Defendants have insufficient knowledge and information to form a belief as to the truth of the remaining allegations contained in Paragraph 8 of Plaintiff's First Amended Complaint.**

9.      While at the Department on this day, a receptionist at the Department provided Plaintiff and Individual A the results of Plaintiff's FOIA request.

**ANSWER:** **Defendants admit that a records clerk at the Romeoville Police Department provided Plaintiff and Selena Anderson the response to a FOIA request.**

10.      After receiving the results of his FOIA request, Plaintiff asked the Department receptionist how he could file a complaint against another police officer at the Department.

**ANSWER:** **Defendants admit that after receiving the FOIA response, Plaintiff asked how to file a complaint against a police officer.**

11.      The Department receptionist directed Plaintiff to Defendant Michienzi to discuss filing a complaint.

**ANSWER:** **Defendants admit that the records clerk directed Plaintiff to speak with Sergeant Michienzi about his request.**

12.      Plaintiff asked Defendant Michienzi about the process for filing a complaint against another Department police officer.  Defendant Michienzi suggested that Plaintiff try to "work it out" with the offending officer rather than filing a formal complaint.

**ANSWER:** **Defendants admit that Plaintiff asked Defendant Michienzi about the process for filing a complaint against another Department police officer. Defendants deny the remaining allegations in Paragraph 12 of Plaintiff's First Amended Complaint.**

13.      Defendant Michienzi refused to advise Plaintiff as to how to file a complaint against another officer.

**ANSWER:** **Defendants deny the allegations in Paragraph 13 of Plaintiff's First Amended Complaint**.

14.      After receiving little to no information about filing a complaint from Defendant Michienzi, Plaintiff and Individual A left the Department.

**ANSWER:** **Defendants admit that at some point Plaintiff and Selena Anderson left the Romeoville Police Department lobby. Defendants deny the remaining allegations contained in Paragraph 14 of Plaintiff's First Amended Complaint.**

15.     When Plaintiff and Individual A got into Individual A's car, Defendant Michienzi and Officer Jones approached Individual A's car from the driver's side, where Individual A was sitting.

**ANSWER:** **Defendants admit that when Plaintiff and Selena Anderson were sitting in Selena Anderson's car, Michienzi and Officer Jones approached the car from the driver's side, where Selena Anderson was sitting.**

16.     Defendant Michienzi and Officer Jones explained to Individual A that they had run her car's plates while Plaintiff and Individual A had been inside the Department and discovered that there was an in-state warrant for Individual A's arrest.

**ANSWER:** **Defendants admit that Officer Jones explained to Selena Anderson that if she was Selena Anderson she may have a warrant for her arrest. Defendants deny the remaining allegations contained in Paragraph 16 of Plaintiff's First Amended Complaint.**

17.     Defendant Michienzi and Officer Jones demanded Individual A get out of the car. Defendant Michienzi and Officer Jones yanked open the car door and proceeded to arrest Individual A.

**ANSWER:** **Defendants admit that Selena Anderson was ordered to exit the vehicle and she was arrested. Defendants deny the remaining allegations in paragraph 17 of Plaintiff's First Amended Complaint.**

18.     At this time, Plaintiff, no longer able to drive home, got out of Individual A's car and began to walk away from the Department.

**ANSWER:** **Defendants admit that Plaintiff exited the car and began walking away from the Romeoville Police Department. Defendants deny the remaining allegations in Paragraph 18 of Plaintiff's First Amended Complaint.**

19.     As Plaintiff was walking away, Defendant Michienzi followed Plaintiff and asked Plaintiff to go back into the Department.

**ANSWER:** **Defendants admit that eventually Michienzi began to follow Plaintiff. Defendants deny the remaining allegations in paragraph 19 of Plaintiff's First Amended Complaint.**

20.     Defendant Michienzi called Plaintiff a "monkey," at which point Plaintiff began recording this interaction on Facebook Live on his iPhone 8 Plus.

**ANSWER:** **Defendants deny that Michienzi called Plaintiff a monkey. Defendants have insufficient knowledge and information to form a belief as to the truth of the remaining allegations contained in Paragraph 20 of Plaintiff's First Amended Complaint.**

21.     While filming on his iPhone 8 Plus, Plaintiff asked Defendant Michienzi if he was under arrest.  Defendant Michienzi responded "Mr. Prince come on."

**ANSWER:** **Defendants admit that Plaintiff held up a cell phone as if he were filming and asked if he was under arrest. Defendants have insufficient knowledge and information to form a belief as to the truth of the remaining allegations contained in Paragraph 21 of Plaintiff's First Amended Complaint.**

22.     While still recording the interaction, Plaintiff repeatedly asked Defendant Michienzi, "Am I under arrest for something?  Am I under arrest for something?"  Defendant Michienzi responded, "Did I say you were under arrest Mr. Prince?"

**ANSWER:** **Defendants admit that Plaintiff held up a cell phone as if he were filming and asked if he were under arrest, and that Michienzi at one point said "did I say you were under arrest, Mr. Prince?" Defendants have insufficient knowledge and information to form a belief as to the truth of the remaining allegations contained in Paragraph 22 of Plaintiff's First Amended Complaint.**

23.     Plaintiff replied, "No.  I don't want to go back to the police department, so, am I under arrest?"

**ANSWER:** **Defendants have insufficient knowledge and information to form a belief as to the truth of the allegations contained in Paragraph 23 of Plaintiff's First Amended Complaint.**

24.     Defendant Michienzi asked Plaintiff if he had any further questions or any further information for him.  Plaintiff replied, "No thank you."

**ANSWER:**     **Defendants have insufficient knowledge and information to form a belief as to the truth of the allegations contained in Paragraph 24 of Plaintiff's First Amended Complaint.**

25.     Plaintiff then jogged away from the Department while still recording the encounter on his iPhone 8 Plus. The video lasted approximately 1 minute 38 seconds.

**ANSWER:**     **Defendants admit that Plaintiff ran away from the Romeoville Police Department. Defendants have insufficient knowledge and information to form a belief as to the truth of the remaining allegations contained in Paragraph 25 of Plaintiff's First Amended Complaint.**

26.     Plaintiff jogged away from the Department and toward a wooded area adjacent to the Department.

**ANSWER:**     **Defendants admit the allegations in Paragraph 26 of Plaintiff's First Amended Complaint.**

27.     After recording the interaction with Defendant Michienzi on his iPhone 8 Plus, Plaintiff next started recording himself on Facebook Live to describe what had just occurred with Defendant Michienzi. Plaintiff was simultaneously sending text messages with a friend to come pick him up from his location. Plaintiff walked for a while.

**ANSWER:**     **Defendants admit that at some point Plaintiff's pace slowed to a walk. Defendants have insufficient knowledge and information to form a belief as to the truth of the remaining allegations contained in Paragraph 27 of Plaintiff's First Amended Complaint.**

28.     Plaintiff then heard Defendant Michienzi behind him. Defendant Michienzi drew his weapon, pointing it at Plaintiff's back, and shouted, "move and I'll shoot you, motherfucker." At this time, Defendant Michienzi and Plaintiff were in a wooded area adjacent to the Department. Plaintiff was afraid for his life and believed Defendant Michienzi was going to shoot him.

**ANSWER:**     **Defendants admit that while in the wooded area behind the Romeoville Police Department, Michienzi drew his firearm and pointed it at Plaintiff after locating Plaintiff lying in a matted down area with his hands in his pockets. Defendants deny the remaining allegations contained in Paragraph 28 of Plaintiff's First Amended Complaint.**

29.     Plaintiff complied with Defendant Michienzi's requests to raise his arms while Defendant Michienzi pointed the gun at Plaintiff's back.  With his free hand, Defendant Michienzi patted Plaintiff down.

**ANSWER:**     **Defendants admit that Michienzi patted Plaintiff down. Defendants deny the remaining allegations in Paragraph 29 of Plaintiff's First Amended Complaint.**

30.     Defendant Michienzi, with his gun still pointed at Plaintiff's back, took Plaintiff's iPhone 8 Plus and Motorola phones and, at some point, put these phones in Defendant Michienzi's pocket.

**ANSWER:**     **Defendants deny the allegations in Paragraph 30 of Plaintiff's First Amended Complaint.**

31.     Defendant Michienzi also emptied the contents of Plaintiff's pockets, which included auxiliary cords.  Defendant Michienzi took the results of the FOIA request from Plaintiff's hands and dropped the FOIA results on the ground nearby.

**ANSWER:**     **Defendants admit that Michienzi removed the contents of Plaintiff's pockets and placed them on the ground. Defendants deny the remaining allegations in Paragraph 31 of Plaintiff's First Amended Complaint.**

32.     At this time, Plaintiff's iPhone 8 Plus was still recording on Facebook Live.

**ANSWER:**     **Defendants have insufficient knowledge and information to form a belief as to the truth of the allegations contained in Paragraph 32 of Plaintiff's First Amended Complaint.**

33.     Defendant Michienzi removed Plaintiff's winter jacket and asked Plaintiff "where are the drugs?"  Defendant Michienzi asked this question multiple times despite the fact that Plaintiff did not have any drugs or drug paraphernalia. Defendant Michienzi kept his weapon pointed at Plaintiff.

**ANSWER:**     **Defendants deny the allegations in Paragraph 33 of Plaintiff's First Amended Complaint.**

34.     Defendant Michienzi instructed Plaintiff to pull up his shirt and shake his waistband, which Plaintiff complied with.  Defendant Michienzi kept his weapon pointed at Plaintiff.

**ANSWER:**     **Defendants deny the allegations in Paragraph 34 of Plaintiff's First Amended Complaint.**

35.     Defendant Michienzi, while keeping his weapon pointed at Plaintiff, instructed Plaintiff to strip naked from the waist down, which Plaintiff complied with.  Plaintiff continued to fear for his life.

**ANSWER:**     **Defendants deny the allegations in Paragraph 35 of Plaintiff's First Amended Complaint.**

36.     Around this time, while Plaintiff was being strip searched, Defendant Dorsey arrived in a Department Utility Terrain Vehicle ("UTV") and witnessed the remaining interactions between Defendant Michienzi and Plaintiff.  Defendant Dorsey exited the UTV and stood nearby watching.

**ANSWER:**     **Defendants admit that at some point during Michienzi's detention of Plaintiff, Dorsey arrived in the UTV and exited the UTV. Defendants deny the remaining allegations in Paragraph 36 of Plaintiff's First Amended Complaint.**

37.     At some point during this interaction, Defendant Michienzi told Plaintiff to turn around and face him, which Plaintiff complied with.

**ANSWER:**     **Defendants deny the allegations in Paragraph 37 of Plaintiff's First Amended Complaint.**

38.     Defendant Michienzi instructed Plaintiff, while Plaintiff was naked from the waist down, to squat and cough twice, which Plaintiff complied with, all while Defendant Michienzi kept his gun pointed at Plaintiff.  Defendant Michienzi told Plaintiff a more thorough search would be done back at the Department.

**ANSWER:**     **Defendants deny the allegations in Paragraph 38 of Plaintiff's First Amended Complaint.**

39.     Defendant Michienzi then instructed Plaintiff to put his clothes back on.

**ANSWER:**    **Defendants deny the allegations in Paragraph 39 of Plaintiff's First Amended Complaint.**

40.    At this point, Defendant Michienzi handcuffed Plaintiff's hands behind his back. Defendant Michienzi then kicked Plaintiff's feet out from under him and caused Plaintiff to fall on his side.

**ANSWER:**    **Defendants admit that Michienzi handcuffed Plaintiff's hands behind his back. Defendants deny the remaining allegations in Paragraph 40 of Plaintiff's First Amended Complaint.**

41.    Without provocation, Defendant Michienzi then kicked Plaintiff in the groin. Plaintiff looked Defendant Dorsey in the eyes from the ground but Defendant Dorsey looked away.

**ANSWER:**    **Defendants deny the allegations in Paragraph 41 of Plaintiff's First Amended Complaint.**

42.    Around this time, Plaintiff told Defendant Michienzi that his iPhone 8 Plus was still recording on Facebook Live. Defendant Michienzi told Plaintiff something to the extent of, "these videos will never see the light of day."

**ANSWER:**    **Defendants deny the allegations in Paragraph 42 of Plaintiff's First Amended Complaint.**

43.    Defendant Michienzi's weapon remained drawn and pointed at Plaintiff the entire time. At no point did Defendant Dorsey attempt to intervene between Defendant Michienzi and Plaintiff.

**ANSWER:**    **Defendants deny the allegations in Paragraph 43 of Plaintiff's First Amended Complaint.**

44.    After being kicked on the ground, Defendant Michienzi forcibly pulled Plaintiff upright by grabbing the handcuffs attached behind Plaintiff's back. Once Plaintiff was standing, Defendant Michienzi grabbed the hood of Plaintiff's jacket in his fist and pulled Plaintiff to the front seat of the UTV, which was driven by Defendant Dorsey.

**ANSWER:**    **Defendants admit that Plaintiff was taken to the UTV and placed in the front seat, and that Dorsey drove the UTV. Defendants deny the remaining allegations in Paragraph 44 of Plaintiff's First Amended Complaint.**

45.    Plaintiff was forced into the passenger side seat of the UTV, while Defendant Michienzi sat directly behind him and held the hood of Plaintiff's jacket with his fist.

**ANSWER:**    **Defendants admit that Plaintiff, under arrest pursuant to a warrant, was taken to the passenger seat of the UTV. Defendants deny the remaining allegations in Paragraph 45 of Plaintiff's First Amended Complaint.**

46.    Plaintiff asked Defendant Michienzi and Defendant Dorsey what had happened to the FOIA results. Defendant Michienzi told Plaintiff he would have to go back to the wooded area if he wanted the results back.

**ANSWER:**    **Defendants deny the allegations in paragraph 46 of Plaintiff's First Amended Complaint.**

47.    While driving back to the Department, Defendant Michienzi told Plaintiff something to the extent of, "this is what happens when you try to file a complaint against my boys." Defendant Dorsey proceeded to drive Defendant Michienzi and Plaintiff back to the Department.

**ANSWER:**    **Defendants deny the allegations in paragraph 47 of Plaintiff's First Amended Complaint.**

48.    At some point, Plaintiff asked to be taken to the hospital but Defendants refused his request.

**ANSWER:**    **Defendants deny the allegations in paragraph 48 of Plaintiff's First Amended Complaint.**

49.    Plaintiff was ultimately charged with resisting a peace officer.

**ANSWER:**    **Defendants admit the allegations in paragraph 49 of Plaintiff's First Amended Complaint.**

50.    Plaintiff was held for several hours before he paid bond. Plaintiff asked Defendant Michienzi for his phones back, since he had seen Defendant Michienzi put them in his pocket, but Defendant Michienzi said that the phones were lost and Plaintiff's phones have never been returned.

**ANSWER:** **Defendants admit that Plaintiff was released on an I-bond. Defendants deny the remaining allegations in Paragraph 50 of Plaintiff's First Amended Complaint.**

51.     After being released, Plaintiff reentered the Department to file a complaint against Defendant Michienzi.

**ANSWER:** **Defendants have insufficient knowledge and information to form a belief as to the truth of the allegations contained in Paragraph 51 of Plaintiff's First Amended Complaint.**

52.     Defendant Michienzi and another officer laughed at Plaintiff and refused to let Plaintiff file a complaint.

**ANSWER:** **Defendants deny the allegations in paragraph 52 of Plaintiff's First Amended Complaint.**

53.     Approximately one year later, the charge of resisting a peace officer was dismissed.

**ANSWER:** **Defendants admit that the charge of resisting a peach officer was dismissed *nolle prosequi* on January 27, 2020.**

## COUNT I—EXCESSIVE FORCE

### 42 U.S.C. § 1983

54.     Plaintiff realleges and incorporates all prior allegations made in this Complaint into this Count as if fully restated herein.

**ANSWER:** **Defendants restate and incorporate their answers to paragraphs 1-53 as their answer to paragraph 54 of Plaintiff's First Amended Complaint.**

55.     The Fourth Amendment prohibits unreasonable searches and seizures. Defendant Michienzi made an unreasonable seizure through the use of intentional and improper force in violation of the Fourth Amendment. *See Alicea v. Thomas*, 815 F.3d 283, 288 (7th Cir. 2016) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

**ANSWER:** **Defendants admit that the Fourth Amendment prohibits unreasonable searches and seizures. Defendants deny the remaining allegations in Paragraph 55 of Plaintiff's First Amended Complaint.**

56.     Defendant Michienzi's use of force, i.e., kicking Plaintiff's feet out from underneath him and kicking him in the groin, is objectively unreasonable in light of the circumstances.  That is, Plaintiff was unarmed, was handcuffed, and was fully compliant with all of Defendant Michienzi's requests.

**ANSWER:** **Defendants deny the allegations in Paragraph 56 of Plaintiff's First Amended Complaint.**

57.     Defendant Michienzi's actions were undertaken with malice, willfulness, and a reckless indifference to Plaintiff's rights.

**ANSWER:** **Defendants deny the allegations in Paragraph 57 of Plaintiff's First Amended Complaint.**

58.     As a direct and proximate result of Defendant Michienzi's misconduct, Plaintiff sustained injuries including pain and suffering.

**ANSWER:** **Defendants deny the allegations in Paragraph 58 of Plaintiff's First Amended Complaint.**

## COUNT II—BATTERY

### Illinois State Law Claim

59.     Plaintiff realleges and incorporates all prior allegations made in this Complaint into this Count as if fully restated herein.

**ANSWER:** **Defendants restate and incorporate their answers to paragraphs 1-58 as their answer to paragraph 59 of Plaintiff's First Amended Complaint.**

60.     The conduct of Defendant Michienzi resulted in offensive physical contact with Plaintiff made without Plaintiff's consent, thus constituting battery under Illinois law.

**ANSWER:** **Defendants deny the allegations in Paragraph 60 of Plaintiff's First Amended Complaint.**

61.     Civil battery is defined by Illinois law as the willful touching of another person. *Pechan v. Dynapro, Inc.*, 251 Ill. App. 3d 1072, 1084 (2d. Dist. 1993).  An action for battery does not

depend on the hostile intent of the defendant, but on the absence of the plaintiff's consent to the

contact. *Id.*

**ANSWER:** **Defendants admit that for all purposes relevant to this complaint, civil battery is defined by Illinois law. Defendant deny the remaining allegations in Paragraph 61 of Plaintiff's First Amended Complaint as an incomplete and thus inaccurate statement of that law.**

62.    Plaintiff, in no way, consented to the contact by Defendant Michienzi.

**ANSWER:** **Defendants have insufficient knowledge and information to form a belief as to the truth of the allegations contained in Paragraph 62 of Plaintiff's First Amended Complaint.**

63.    As a direct and proximate result of Defendant Michienzi's misconduct, Plaintiff

sustained injuries including pain and suffering.

**ANSWER:** **Defendants deny the allegations in Paragraph 63 of Plaintiff's First Amended Complaint.**

## COUNT III—UNREASONABLE SEARCH

### 42 U.S.C. § 1983

64.    Plaintiff realleges and incorporates all prior allegations made in this Complaint into

this Count as if fully restated herein.

**ANSWER:** **Defendants restate and incorporate their answers to paragraphs 1-63 as their answer to paragraph 64 of Plaintiff's First Amended Complaint.**

65.    The Fourth Amendment prohibits unreasonable searches when the search intrudes

on a reasonable expectation of privacy. *Grady v. North Carolina*, 135 S. Ct. 1368, 1371 (2015).

**ANSWER:** **Defendants admit that the Fourth Amendment prohibits unreasonable searches. Defendants deny the remaining allegations in Paragraph 65 of Plaintiff's First Amended Complaint as an incomplete and therefore inaccurate statement of Fourth Amendment law.**

66.    Plaintiff was strip searched by Defendant Michienzi. The constitutionality of a strip

search is evaluated by balancing the need for the particular search against the invasion of personal

rights that the search entails. *Campbell v. Miller*, 499 F.3d 711, 716 (7th Cir. 2007) (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

**ANSWER:** **Defendants deny that Plaintiff was strip searched and therefore deny the allegations in Paragraph 66 of Plaintiff's First Amended Complaint.**

67.    Plaintiff was not even at the Department when he was ordered to strip naked from the waist down by Defendant Michienzi.  Rather, Plaintiff was standing in public space and had given Defendant Michienzi no reason to suspect that Plaintiff was concealing anything that warranted a strip search.

**ANSWER:** **Defendants deny that Plaintiff was strip searched and therefore deny the allegations in Paragraph 67 of Plaintiff's First Amended Complaint.**

68.    Nevertheless, Defendant Michienzi conducted an unlawful strip search of Plaintiff out in the open, humiliating him, and which served no legal purpose.

**ANSWER:** **Defendants deny the allegations in Paragraph 68 of Plaintiff's First Amended Complaint.**

69.    As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including suffering.

**ANSWER:** **Defendants deny the allegations in Paragraph 69 of Plaintiff's First Amended Complaint.**

## COUNT IV—FAILURE TO INTERVENE

### 42 U.S.C. § 1983

70.    Plaintiff realleges and incorporates all prior allegations made in this Complaint into this Count as if fully restated herein.

**ANSWER:** **Defendants restate and incorporate their answers to paragraphs 1-69 as their answer to paragraph 70 of Plaintiff's First Amended Complaint.**

71.    As set out in Count I, Defendant Michienzi used excessive force against Plaintiff while Defendant Dorsey stood idly by and did nothing to stop Defendant's Michienzi's conduct.

Defendant Dorsey also stood by while Defendant Michienzi subjected Plaintiff to an unlawful strip search.

**ANSWER:** **Defendants deny the allegations in Paragraph 71 of Plaintiff's First Amended Complaint.**

72. A governmental official cannot stand idly by when he has a reasonable opportunity to stop the constitutional violation of another government official. *See Sanchez v. City of Chicago*, 700 F.3d 919, 926 (7th Cir. 2012).

**ANSWER:** **Defendants admit that a police officer may be liable under the Fourth Amendment under a "failure to intervene" theory. Defendants deny the remaining allegations in Paragraph 72 of Plaintiff's First Amended Complaint as an incomplete and therefore inaccurate statement of Fourth Amendment law.**

73. Defendant Dorsey knew Defendant Michienzi was committing unlawful conduct and thereby violating the Fourth Amendment, and Defendant Dorsey had a realistic opportunity to intervene to stop the violation. *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2007).

**ANSWER:** **Defendants deny the allegations in Paragraph 73 of Plaintiff's First Amended Complaint.**

74. Defendant Dorsey did not make a single attempt, either through oral statements or physical intervention, to prevent Defendant Michienzi from subjecting Plaintiff to an unlawful strip search or battering Plaintiff.

**ANSWER:** **Defendants deny the allegations in Paragraph 74 of Plaintiff's First Amended Complaint.**

75. As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including pain and suffering.

**ANSWER:** **Defendants deny the allegations in Paragraph 75 of Plaintiff's First Amended Complaint.**

## COUNT V—FAILURE TO PROVIDE MEDICAL CARE

### 42 U.S.C. § 1983

76.     Plaintiff realleges and incorporates all prior allegations made in this Complaint into this Count as if fully restated herein.

**ANSWER:**     **Defendants restate and incorporate their answers to paragraphs 1-75 as their answer to paragraph 76 of Plaintiff's First Amended Complaint.**

77.     Plaintiff was denied necessary medical care following his arrest.

**ANSWER:**     **Defendants deny the allegations in Paragraph 77 of Plaintiff's First Amended Complaint.**

78.     "'[W]hen the State takes a person into its custody and holds her there against her will, the Constitution imposes upon it a corresponding duty to assume some responsibility for her safety and general well-being.'" *Ortiz v. City of Chicago*, 656 F.3d 523, 531 (7th Cir. 2011) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Serv.*, 489 U.S. 189, 199-200 (1989)).

**ANSWER:**     **Defendants admit that pretrial detainees may bring a federal constitutional claim for denial of medical care. Defendants deny the remaining allegations in Paragraph 78 of Plaintiff's First Amended Complaint as an incomplete and therefore inaccurate statement of the applicable law.**

79.     There are four elements that inform whether the denial of medical care was objectively reasonable, which include: "(1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." *Ortiz*, 656 F.3d at 530 (citing *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007)).

**ANSWER:**     **Defendants deny the allegations in Paragraph 79 of Plaintiff's First Amended Complaint as an incomplete and therefore inaccurate statement of the applicable law.**

80. Defendant Michienzi and Defendant Dorsey had notice of Plaintiff's medical needs, because Defendant Michienzi was the one who inflicted the trauma and Defendant Dorsey witnessed Defendant Michienzi's unlawful conduct.

**ANSWER:** **Defendants deny the allegations in Paragraph 80 of Plaintiff's First Amended Complaint.**

81. Defendant Michienzi and Defendant Dorsey were aware of the seriousness of the trauma caused to Plaintiff's groin.

**ANSWER:** **Defendants deny the allegations in Paragraph 81 of Plaintiff's First Amended Complaint.**

82. The requested medical attention was reasonable in scope.

**ANSWER:** **Defendants deny the allegations in Paragraph 82 of Plaintiff's First Amended Complaint.**

83. It was in police interests to comply with Plaintiff's request for medical attention.

**ANSWER:** **Defendants deny the allegations in Paragraph 83 of Plaintiff's First Amended Complaint.**

84. As a result of this misconduct, Plaintiff sustained injuries including pain and suffering.

**ANSWER:** **Defendants deny the allegations in Paragraph 84 of Plaintiff's First Amended Complaint.**

### COUNT VI—CONVERSION

### State Law Claim

85. Plaintiff realleges and incorporates all prior allegations made in this Complaint into this Count as if fully restated herein.

**ANSWER:** **Defendants restate and incorporate their answers to paragraphs 1-84 as their answer to paragraph 85 of Plaintiff's First Amended Complaint.**

86. Plaintiff had a right to the iPhone 8 Plus and Motorola phones because they were his personal phones.

**ANSWER:**   Defendants have insufficient knowledge and information to form a belief as to the truth of the allegations contained in Paragraph 86 of Plaintiff's First Amended Complaint.

87.   Defendant Michienzi took Plaintiff's phones into his possession.

**ANSWER:**   Defendants admit that Michienzi took phones from Plaintiff's person during the arrest. Defendants have insufficient knowledge and information to form a belief as to the truth of the remaining allegations contained in Paragraph 87 of Plaintiff's First Amended Complaint.

88.   Defendant Michienzi told Plaintiff that his phones were "lost."

**ANSWER:**   Defendants admit the allegations in Paragraph 88 of Plaintiff's First Amended Complaint.

89.   As a result of Defendant's exercise of control over Plaintiff's property, Plaintiff, to this day, has never received back his phones.

**ANSWER:**   Defendants have insufficient knowledge and information to form a belief as to the truth of the allegations contained in Paragraph 89 of Plaintiff's First Amended Complaint.

### COUNT VII—MALICIOUS PROSECUTION

### State Law Claim

90.   Plaintiff realleges and incorporates all prior allegations made in this Complaint into this Count as if fully restated herein.

**ANSWER:**   Defendants restate and incorporate their answers to paragraphs 1-89 as their answer to Paragraph 90 of Plaintiff's First Amended Complaint.

91.   Defendants caused Plaintiff to be subjected to judicial proceedings for which there was no probable cause.  These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER:**   Defendants deny the allegations in Paragraph 91 of Plaintiff's First Amended Complaint.

92.   A cause of action for malicious prosecution must allege facts establishing the following: (a) the defendant brought the underlying suit, either in a criminal or civil judicial

proceeding against the claimant, maliciously and without probable cause; (b) the termination of the

underlying judicial proceeding in favor of the claimant; (c) some "special injury" or special damage

beyond the usual expense, time, or annoyance in defending the underlying suit. *Swick v. Liataud*, 169

Ill. 2d 504 (1996).

**ANSWER:** **Defendants admit that Illinois law allows a cause of action for malicious prosecution. Defendants deny the remaining allegations in Paragraph 92 of Plaintiff's First Amended Complaint as an incomplete and therefore inaccurate statement of Illinois law.**

93.     The individual Defendants accused Plaintiff of resisting a peace officer while

knowing this accusation to be without probable cause.

**ANSWER:** **Defendants deny the allegations in Paragraph 93 of Plaintiff's First Amended Complaint.**

94.     The misconduct described in this Count was undertaken with malice, willfulness, and

reckless indifference to the rights of Plaintiff.

**ANSWER:** **Defendants deny the allegations in Paragraph 94 of Plaintiff's First Amended Complaint.**

95.     As a result of this misconduct, Plaintiff was forced to attend court hearings on

numerous occasions.

**ANSWER:** **Defendants deny the allegations in Paragraph 95 of Plaintiff's First Amended Complaint.**

96.     Upon information and belief, Defendant Michienzi failed to appear, and the charges

against Plaintiff were dismissed.

**ANSWER:** **Defendants admit the charges were dismissed *nolle prosequi*. Defendants deny the remaining allegations contained in Paragraph 96 of Plaintiff's First Amended Complaint.**

97.     As a result of Defendant Michienzi's misconduct, Plaintiff sustained injuries,

including suffering.

**ANSWER:** **Defendants deny the allegations in Paragraph 97 of Plaintiff's First Amended Complaint.**

## COUNT VIII—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### State Law Claim

98.     Plaintiff realleges and incorporates all prior allegations made in this Complaint into this Count as if fully restated herein.

**ANSWER:** **Defendants restate and incorporate their answers to paragraphs 1-97 as their answer to paragraph 98 of Plaintiff's First Amended Complaint.**

99.     A claim exists for intentional infliction of emotional distress if the plaintiff can prove: (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant intended to cause or recklessly or consciously disregarded the probability of causing emotional distress; (3) that the plaintiff suffered severe or extreme emotional distress; and (4) that the defendant's conduct actually and proximately caused emotional distress. *See Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 89– 90 (1976); *see also Doe vs. Calumet City*, 161 Ill. 2d 374 (1994). The plaintiff does not, however, need to establish a contemporaneous physical impact or injury. *Honaker v. Smith*, 256 F.3d 477 (7th Cir. 2000).

**ANSWER:** **Defendants admit that Illinois law allows a cause of action for intentional infliction of emotional distress. Defendants deny the remaining allegations in Paragraph 99 of Plaintiff's First Amended Complaint as an incomplete and therefore inaccurate statement of Illinois law.**

100.     The acts and conduct of the individual Defendants as set forth above were extreme and outrageous. The individual Defendants intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff. This conduct included Defendant Michienzi swearing and yelling racial slurs at Plaintiff.

**ANSWER:** **Defendants deny the allegations in Paragraph 100 of Plaintiff's First Amended Complaint.**

101.     Such actions and conduct directly and proximately caused severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional distress.

**ANSWER:**  Defendants deny the allegations in Paragraph 101 of Plaintiff's First Amended Complaint.

102.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

**ANSWER:**  Defendants deny the allegations in Paragraph 102 of Plaintiff's First Amended Complaint.

103.  As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including severe emotional distress and anguish.

**ANSWER:**  Defendants deny the allegations in Paragraph 103 of Plaintiff's First Amended Complaint.

## COUNT IX—AGAINST THE VILLAGE OF ROMEOVILLE: *MONELL*

104.  Plaintiff realleges and incorporates all prior allegations made in this Complaint into this Count as if fully restated herein.

**ANSWER:**  Defendants restate and incorporate their answers to paragraphs 1-103 as their answer to paragraph 104 of Plaintiff's First Amended Complaint.

105.  *Monell* claims establish liability against a City when the plaintiff can show that: (1) he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority; which (3) was the proximate cause of the injury. *See Levin v. Madigan*, 692 F.3d 607, 621 (7th Cir. 2012); *Ovadal v. City of Madison*, 416 F.3d 531, 535 (7th Cir. 2005).

**ANSWER:**  Defendants admit that federal constitutional law allows *Monell* claims against municipalities. Defendants deny the remaining allegations in Paragraph 105 of Plaintiff's First Amended Complaint as an incomplete and therefore inaccurate statement of the law of *Monell* claims.

106.  At all relevant times, Plaintiff possessed a right under the Fourth Amendment of the Constitution to be free from unreasonable searches and excessive force by police.

**ANSWER:**  Defendants admit the allegations in Paragraph 106 of Plaintiff's First Amended Complaint but deny any such violation.

107. Plaintiff's injuries were proximately caused by a widespread custom within the Department, which falls under the authority of the Defendant Village of Romeoville.

**ANSWER:** **Defendants deny the allegations in Paragraph 107 of Plaintiff's First Amended Complaint.**

108. The Department's excessive use of force is enabled by a failure to investigate complaints against officers, discipline officers for abusive behavior, and a code of silence among Department employees who are emboldened to draft false police reports and hide and destroy evidence as a proximate result of the above.

**ANSWER:** **Defendants deny the allegations in Paragraph 108 of Plaintiff's First Amended Complaint.**

109. The failure to discipline officers for drafting inaccurate and untruthful police reports encourages police officers not to report the misconduct of other officers and creates a culture that enables misconduct.

**ANSWER:** **Defendants deny the allegations in Paragraph 109 of Plaintiff's First Amended Complaint.**

110. Specifically, in this case, Defendant Michienzi intentionally concealed or destroyed Plaintiff's cell phones, one of which Defendant Michienzi knew was being used to record his misconduct.

**ANSWER:** **Defendants deny the allegations in Paragraph 110 of Plaintiff's First Amended Complaint.**

111. Defendant Michienzi reported that Plaintiff resisted his arrest, however, this report is false. Not only did Plaintiff remain unarmed and fully compliant during the entire arrest, but Defendant Michienzi's conduct of keeping his gun drawn and kicking Plaintiff to the ground are acts that were not in any way warranted based on Plaintiff's peaceful behavior.

**ANSWER:** **Defendants admit that Michienzi reported that Plaintiff resisted or obstructed Michienzi's performance of his duties as a peace officer. Defendants deny the remaining allegations in Paragraph 111 of Plaintiff's First Amended Complaint.**

112.    Defendant Village of Romeoville has failed to act to remedy a pattern of abuse so widespread it amounts to policy, and with actual knowledge of these and similar events. Defendant Village of Romeoville is thus the moving force behind Plaintiff's deprivation of rights.

**ANSWER:**    **Defendants deny the allegations in Paragraph 112 of Plaintiff's First Amended Complaint.**

## JURY DEMAND

113.    Plaintiff requests a trial by jury.

**ANSWER:**    **Defendants admit that Plaintiff has requested a trial by jury.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants:

114.    For compensatory damages as determined by the trier of fact to adequately compensate Plaintiff for the injuries describes in this Complaint;

**ANSWER:**    **Defendants deny the allegations contained in Paragraph 114 of Plaintiff's Complaint.**

115.    For punitive damages as determined by the trier of fact to punish each Defendant against which they are awarded and to deter future similar conduct by that Defendant;

**ANSWER:**    **Defendants deny the allegations contained in Paragraph 115 of Plaintiff's Complaint.**

116.    For Plaintiff's attorney's fees and costs incurred in prosecuting this action pursuant to 42 U.S.C. § 1983; and

**ANSWER:**    **Defendants deny the allegations contained in Paragraph 116 of Plaintiff's Complaint.**

117.    For all other relief that this Court deems fair and equitable.

**ANSWER:**    **Defendants deny the allegations contained in Paragraph 117 of Plaintiff's Complaint.**

WHEREFORE, Defendants MICHAEL MICHIENZI, TOM DORSEY and VILLAGE OF ROMEOVILLE deny that the Plaintiff is entitled to any judgment whatsoever against them, and pray this Honorable Court will enter judgment in their favor and allow for the costs of defending this lawsuit.

Respectfully submitted,

**s/ G. David Mathues**
Michael D. Bersani, ARDC No. 06200897
G. David Mathues, ARDC No. 06293314
*Attorneys for Defendants*
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, Illinois 60143-3156
Phone: 630-773-4774; Fax: 630-773-4851
mbersani@hcbattorneys.com
dmathues@hcbattorneys.com

## FIRST AFFIRMATIVE DEFENSE

NOW COME Defendants MICHAEL MICHIENZI and TOM DORSEY by and through their attorneys, MICHAEL D. BERSAI and G. DAVID MATHUES of HERVAS, CONDON & BERSANI, P.C., and for their First Affirmative Defense to Plaintiff's First Amended Complaint, Defendants state as follows:

The Defendants did not violate any clearly established constitutional right of which a reasonable person would have known, thus entitling them to qualified immunity.

WHEREFORE, Defendants MICHAEL MICHIENZI and TOM DORSEY deny that the Plaintiff is entitled to any judgment whatsoever against them and pray this Honorable Court will enter a judgment in their favor and allow for the costs of defending this lawsuit.

**s/G. David Mathues**

Michael D. Bersani, ARDC No. 06200897
G. David Mathues, ARDC No. 06293314
*Attorneys for Defendants*
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, Illinois 60143-3156
Phone: 630-773-4774; Fax: 630-773-4851
mbersani@hcbattorneys.com
dmathues@hcbattorneys.com

## SECOND AFFIRMATIVE DEFENSE

NOW COME Defendants MICHAEL MICHIENZI, TOM DORSEY, and the VILLAGE OF ROMEOVILLE, by and through their attorneys, MICHAEL D. BERSAI and G. DAVID MATHUES of HERVAS, CONDON & BERSANI, P.C., and for their Second Affirmative Defense to Plaintiff's First Amended Complaint, Defendants state as follows:

Plaintiff's claims are barred, in whole or in part, by the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/101 et seq., including:

1.      Defendant Village of Romeoville is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by an injured party or a third party. 745 ILCS 10/2-102 and 10/2-302. Therefore, the Village of Romeoville is not liable for any punitive damages award should such an award be made in favor of Plaintiff.

2.      Defendant Village of Romeoville is not liable for an injury resulting from an act or omission of its employees, including Defendants Michienzi and Dorsey, where the employees are not liable. 745 ILCS 10/2-109 (West 2010). No Village of Romeoville employee, including Michienzi and Dorsey, is liable for Plaintiff's alleged injuries and damages, so the Village of Romeoville is not liable.

3.      Defendants are not liable for their alleged acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-202 (West 2010). The Defendants at all times were executing or enforcing the law, and their alleged acts or omissions did not constitute willful and wanton conduct.

4.      Defendants are not liable for injury caused by the acts or omissions of another person. 745 ILCS 10/2-204. If Plaintiff sustained any injuries, those injuries were caused by the acts or omissions of other persons, including himself, so the Defendants are not liable.

5.    Defendants are not liable for injury caused by their alleged instituting or prosecuting any judicial or administrative proceeding within the scope of their employment, unless they acted maliciously and without probable cause. 745 ILCS 10/2-208 (West 2010). The Defendants did not institute or prosecute any judicial or administrative proceeding or act maliciously, and their actions were supported by probable cause.

6.    Defendants are not liable for any injury proximately caused by their failure to furnish or obtain medical care for a prisoner in their custody unless, acting within the scope of their employment, they know from observation that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fail to take reasonable action to summon medical care. 745 ILCS 10/4-105. The Defendants did not know from observation that Plaintiff needed immediate medical care, and did not act in a willful and wanton manner in failing to summon that care, so they are not liable.

**s/G. David Mathues**
Michael D. Bersani, ARDC No. 06200897
G. David Mathues, ARDC No. 06293314
*Attorneys for Defendants*
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, Illinois 60143-3156
Phone:  630-773-4774; Fax:  630-773-4851
mbersani@hcbattorneys.com
dmathues@hcbattorneys.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHAQUILLE PRINCE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-7265 |
| | ) | |
| vs. | ) | |
| | ) | Honorable Robert W. Gettleman |
| SGT. MICHIENZI #357, et al., | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## CERTIFICATE OF SERVICE

I hereby certify that on **July 30, 2020**, I electronically filed the foregoing ***Defendants' Answer and Affirmative Defenses to Plaintiff's First Amended Complaint,*** with the Clerk of the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which will send notice to:

**TO:**    Rachael George Pontikes
David Trowbridge Hartmann
Kelly J. Kearney
Reed Smith, LLP
10 S. Wacker Dr., 40th Fl.
Chicago, IL 60606
rpontikes@reedsmith.com
dhartmann@reedsmith.com
kkearney@reedsmith.com

**s/ G. David Mathues**
Michael D. Bersani, ARDC No. 06200897
G. David Mathues, ARDC No. 06293314
*Attorneys for Defendants*
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, Illinois 60143-3156
Phone: 630-773-4774; Fax: 630-773-4851
mbersani@hcbattorneys.com
dmathues@hcbattorneys.com