**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHAQUILLE PRINCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19-cv-7265 |
| vs. ) | |
| ) | Judge Robert Gettleman |
| SGT. MICHIENZI #357, et al., ) | |
| ) | Magistrate Judge Susan Cox |
| Defendants. ) | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

NOW COMES Plaintiff, Shaquille Prince, by his attorneys, Jeffrey Mayer and Ryan Krone, of Akerman LLP, complaining of Defendant Michael Michienzi #357, Defendant Tom Dorsey, and Defendant Village of Romeoville (collectively, the "Defendants"), alleging as follows:

**INTRODUCTION**

1. This is an action for money damages brought pursuant to 42 U.S.C. § 1983 and the laws of the State of Illinois to address deprivations of Plaintiff's rights under the Constitution of the United States and the State of Illinois.

2. On December 21, 2018, Plaintiff went to the Romeoville Police Department ("Department") to file a complaint against a Romeoville police officer for prior police misconduct and to retrieve the results of a Freedom of Information Act ("FOIA") request.

3. After Plaintiff left the Department, Defendant Michienzi followed Plaintiff with his weapon drawn. Defendant Michienzi came up from behind Plaintiff and ordered him to strip off his clothing, battered Plaintiff, and forced Plaintiff back to the Department.

4. Defendant Michienzi charged Plaintiff with resisting a peace officer, which was later dismissed.

5. Plaintiff was the victim of unlawful retaliation and excessive force, and it is for this reason and the reasons set forth below that Plaintiff now seeks relief from Defendants.

## JURISDICTION AND VENUE

6. This is an action for money damages brought pursuant to 42 U.S.C. § 1983 and the laws of the State of Illinois to address deprivations of Plaintiff's rights under the Constitution of the United States and the laws of State of Illinois.

7. Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on 42 U.S.C. §1983 and questions of federal constitutional law. Supplemental jurisdiction over Plaintiffs' state law claims is pursuant to 28 U.S.C. §1367.

8. Venue is proper under 28 U.S.C. §1391(b) in the Northern District in that the events and conduct complained of herein all occurred in the Northern District.

## PARTIES

9. Plaintiff Shaquille Prince is a citizen of the United States and resides in the Northern District of Illinois.

10. Defendant Michienzi and Defendant Dorsey, were, at all relevant times herein, employees of the Department. They engaged in the conduct complained of while on duty and in the course and scope of their employment under color of law.

11. At all relevant times, Defendant Village of Romeoville, an Illinois municipal corporation, was the employer and principal of the individual Defendants, who acted pursuant to its policies and practices.

## **STATEMENT OF FACTS**

### The FOIA Request

12. Throughout 2018, Plaintiff submitted multiple FOIA requests to the Department to retrieve body cam and dash cam footage from a January 25, 2018 incident, wherein Plaintiff was assaulted and battered by an officer of the Department.

13. On December 21, 2018, Plaintiff's friend, who will hereinafter be referred to as Individual A, drove Plaintiff and herself to the Department to retrieve the results of a FOIA request related to the January 25, 2018 incident.

14. While at the Department on this day, a receptionist at the Department provided Plaintiff and Individual A the results of the FOIA request.

### Plaintiff's Desire to File a Complaint

15. After receiving the results of his FOIA request, Plaintiff asked the Department receptionist how he could file a complaint against another police officer at the Department.

16. The Department receptionist directed Plaintiff to Defendant Michienzi to discuss filing a complaint.

17. Plaintiff asked Defendant Michienzi about the process for filing a complaint against another Department police officer. Defendant Michienzi suggested that Plaintiff try to "work it out" with the offending officer rather than filing a formal complaint.

18. Defendant Michienzi refused to advise Plaintiff as to how to file a complaint against another officer, and refused to allow Plaintiff to obtain a complaint form.

### Attempting to Leave the Department

19. After being stonewalled by Defendant Michienzi in his attempts to file a complaint and obtain a complaint form, Plaintiff and Individual A left the Department.

20. When Plaintiff and Individual A got into Individual A's car, Defendant Michienzi and Officer Jones approached Individual A's car from the driver's side, where Individual A was sitting.

21. Defendant Michienzi and Officer Jones explained to Individual A that they had run her car's plates while Plaintiff and Individual A had been inside the Department and discovered that there was an in-state warrant for Individual A's arrest.

22. Defendant Michienzi and Officer Jones demanded Individual A get out of the car. Defendant Michienzi and Officer Jones yanked open the car door and proceeded to arrest Individual A.

23. At this time, Plaintiff, no longer able to drive home, got out of Individual A's car and began to walk away from the Department.

24. Defendant Michienzi took the FOIA documents from Plaintiff, looked through the documents, and returned the documents to Plaintiff.

25. As Plaintiff was walking away, Defendant Michienzi followed Plaintiff and asked Plaintiff to go back into the Department.

26. Defendant Michienzi called Plaintiff a "monkey," at which point Plaintiff began recording this interaction on his iPhone 8 Plus.

27. While filming on his iPhone 8 Plus, Plaintiff asked Defendant Michienzi if he was under arrest. Defendant Michienzi responded "Mr. Prince come on."

28. While still recording the interaction, Plaintiff repeatedly asked Defendant Michienzi, "Am I under arrest for something? Am I under arrest for something?" Defendant Michienzi responded, "Did I say you were under arrest Mr. Prince?"

29. Plaintiff replied, "No. I don't want to go back to the police department, so, am I under arrest?"

30. Defendant Michienzi asked Plaintiff if he had any further questions or any further information for him. Plaintiff replied, "No thank you."

31. Plaintiff then jogged away from the Department while still recording the encounter on his iPhone 8 Plus. The video lasted approximately 1 minute 38 seconds.

### After Leaving the Department

32. Plaintiff jogged away from the Department and toward a wooded area adjacent to the Department.

33. After recording the interaction with Defendant Michienzi on his iPhone 8 Plus, Plaintiff next started recording himself on Facebook Live to describe what had just occurred with Defendant Michienzi. Plaintiff was simultaneously sending text messages to friends to come pick him up from his location. Plaintiff walked for a while.

34. Plaintiff then heard Defendant Michienzi behind him. Defendant Michienzi drew his weapon, pointing it at Plaintiff's back, and shouted, "move and I'll shoot you, motherfucker." At this time, Defendant Michienzi and Plaintiff were in a wooded area adjacent to the Department. Plaintiff was afraid for his life and believed Defendant Michienzi was going to shoot him.

35. Plaintiff complied with Defendant Michienzi's requests to raise his arms while Defendant Michienzi pointed the gun at Plaintiff's back. With his free hand, Defendant Michienzi patted Plaintiff down.

36. Defendant Michienzi, with his gun still pointed at Plaintiff's back, took Plaintiff's iPhone 8 Plus and Motorola phones and, at some point, put these phones in Defendant Michienzi's pocket.

37. Defendant Michienzi also emptied the contents of Plaintiff's pockets, which included auxiliary cords. Defendant Michienzi took the results of the FOIA request from Plaintiff's hands and dropped the FOIA results on the ground nearby.

38. At this time, Plaintiff's iPhone 8 Plus was still recording on Facebook Live.

39. Defendant Michienzi removed Plaintiff's winter jacket and asked Plaintiff "where are the drugs?" Defendant Michienzi asked this question multiple times despite the fact that Plaintiff did not have any drugs or drug paraphernalia and had not given Defendant Michienzi any reason to believe that he was in possession of drugs or drug paraphernalia. Defendant Michienzi kept his weapon pointed at Plaintiff.

40. Defendant Michienzi then instructed Plaintiff to pull up his shirt and shake his waistband, which Plaintiff complied with. Defendant Michienzi kept his weapon pointed at Plaintiff.

41. Defendant Michienzi, while keeping his weapon pointed at Plaintiff, instructed Plaintiff to strip naked from the waist down, which Plaintiff complied with. Plaintiff continued to fear for his life as Defendant Michienzi continued to point his weapon at Plaintiff despite the fact it was clear that Plaintiff was unarmed and posed no threat to Defendant Michienzi.

42. Around this time, while Plaintiff was being strip searched, Defendant Dorsey arrived in a Department Utility Terrain Vehicle ("UTV") and witnessed the remaining interactions between Defendant Michienzi and Plaintiff. Defendant Dorsey exited the UTV and stood nearby watching.

43. At some point during this interaction, Defendant Michienzi told Plaintiff to turn around and face him, which Plaintiff complied with.

44. Defendant Michienzi instructed Plaintiff, while Plaintiff was naked from the waist down, to squat and cough twice, which Plaintiff complied with, all while Defendant Michienzi kept his gun pointed at Plaintiff. Defendant Michienzi told Plaintiff a more thorough search would be done back at the Department.

45. Defendant Michienzi then instructed Plaintiff to put his clothes back on.

46. At this point, Defendant Michienzi handcuffed Plaintiff's hands behind his back. Defendant Michienzi then kicked Plaintiff's feet out from under him and caused Plaintiff to fall hard on his side.

47. Without provocation, Defendant Michienzi then kicked Plaintiff in the groin. Plaintiff looked Defendant Dorsey in the eyes from the ground hoping he would intervene to stop the battery that was occurring, but Defendant Dorsey looked away.

48. Around this time, Plaintiff told Defendant Michienzi that his iPhone 8 Plus was still recording on Facebook Live. Defendant Michienzi told Plaintiff something to the extent of, "these videos will never see the light of day."

49. Defendant Michienzi's weapon remained drawn and pointed at Plaintiff the entire time. At no point did Defendant Dorsey attempt to intervene between Defendant Michienzi and Plaintiff.

50. After being kicked on the ground, Defendant Michienzi forcibly pulled Plaintiff upright by grabbing the handcuffs attached behind Plaintiff's back. Once Plaintiff was standing, Defendant Michienzi grabbed the hood of Plaintiff's jacket in his fist and pulled Plaintiff to the front seat of the UTV, which was driven by Defendant Dorsey.

51. Plaintiff was forced into the passenger side seat of the UTV, while Defendant Michienzi sat directly behind him and held the hood of Plaintiff's jacket with his fist.

52. Plaintiff asked Defendant Michienzi and Defendant Dorsey to bring his FOIA results. Defendant Michienzi told Plaintiff he would have to go back to the wooded area if he wanted the results back.

53. While driving back to the Department, Defendant Michienzi told Plaintiff something to the extent of, "this is what happens when you try to file a complaint against my boys." Defendant Dorsey proceeded to drive Defendant Michienzi and Plaintiff back to the Department.

54. At some point, Plaintiff asked to be taken to the hospital but Defendants refused his request.

55. Plaintiff was ultimately charged with resisting a peace officer despite the fact Defendant Michienzi previously informed Plaintiff he was not under arrest.

56. Plaintiff was held for several hours before he paid bond. Plaintiff asked Defendant Michienzi for his phones back, since he had seen Defendant Michienzi put them in his pocket, but Defendant Michienzi said that the phones were lost and Plaintiff's phones have never been returned to this day.

57. After being released, Plaintiff reentered the Department to file a complaint against Defendant Michienzi.

58. Defendant Michienzi and another officer laughed at Plaintiff and refused to let Plaintiff file a complaint.

59. As a result of the Defendants' actions, Plaintiff has suffered great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and the events described herein have exacerbated prior mental anguish and distress.

**Dismissal of Charges**

60.     Approximately one year later, the charge of resisting a peace officer was dismissed.

**COUNT I—EXCESSIVE FORCE**

**42 U.S.C. § 1983**

61.     Plaintiff realleges and incorporates all prior allegations made in this Complaint into this Count as if fully restated herein.

62.     The Fourth Amendment prohibits unreasonable searches and seizures. Defendant Michienzi made an unreasonable seizure through the use of intentional and improper force in violation of the Fourth Amendment. *See Alicea v. Thomas*, 815 F.3d 283, 288 (7th Cir. 2016) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

63.     Defendant Michienzi's use of force, i.e., kicking Plaintiff's feet out from underneath him and kicking him in the groin, is objectively unreasonable in light of the circumstances. That is, Plaintiff was unarmed, was handcuffed, and was fully compliant with all of Defendant Michienzi's requests.

64.     Defendant Michienzi's actions were undertaken with malice, willfulness, and a reckless indifference to Plaintiff's rights.

65.     As a direct and proximate result of Defendant Michienzi's misconduct, Plaintiff sustained injuries including pain and suffering.

**COUNT II—BATTERY**

**Illinois State Law Claim**

66.     Plaintiff realleges and incorporates all prior allegations made in this Complaint into this Count as if fully restated herein.

67. The conduct of Defendant Michienzi resulted in offensive physical contact with Plaintiff made without Plaintiff's consent, thus constituting battery under Illinois law.

68. Civil battery is defined by Illinois law as the willful touching of another person. *Pechan v. Dynapro, Inc.*, 251 Ill. App. 3d 1072, 1084 (2d. Dist. 1993). An action for battery does not depend on the hostile intent of the defendant, but on the absence of the plaintiff's consent to the contact. *Id.*

69. Plaintiff, in no way, consented to the contact by Defendant Michienzi.

70. As a direct and proximate result of Defendant Michienzi's misconduct, Plaintiff sustained injuries including pain and suffering.

### COUNT III—UNREASONABLE SEARCH

### 42 U.S.C. § 1983

71. Plaintiff realleges and incorporates all prior allegations made in this Complaint into this Count as if fully restated herein.

72. The Fourth Amendment prohibits unreasonable searches when the search intrudes on a reasonable expectation of privacy. *Grady v. North Carolina*, 135 S. Ct. 1368, 1371 (2015).

73. Plaintiff was strip searched by Defendant Michienzi. The constitutionality of a strip search is evaluated by balancing the need for the particular search against the invasion of personal rights that the search entails. *Campbell v. Miller*, 499 F.3d 711, 716 (7th Cir. 2007) (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

74. Plaintiff was not even at the Department when he was ordered to strip naked from the waist down by Defendant Michienzi. Rather, Plaintiff was standing in public space and had given Defendant Michienzi no reason to suspect that Plaintiff was concealing anything that warranted a strip search.

75. Nevertheless, Defendant Michienzi conducted an unlawful strip search of Plaintiff out in the open, humiliating him, and which served no legal purpose.

76. As an alternative, this unlawful search and seizure constitutes a false imprisonment under Illinois State law.

77. As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including suffering.

## COUNT IV—FAILURE TO INTERVENE

## 42 U.S.C. § 1983

78. Plaintiff realleges and incorporates all prior allegations made in this Complaint into this Count as if fully restated herein.

79. As set out in Count I, Defendant Michienzi used excessive force against Plaintiff while Defendant Dorsey stood idly by and did nothing to stop Defendant's Michienzi's conduct. Defendant Dorsey also stood by while Defendant Michienzi subjected Plaintiff to an unlawful strip search.

80. A governmental official cannot stand idly by when he has a reasonable opportunity to stop the constitutional violation of another government official. See *Sanchez v. City of Chicago*, 700 F.3d 919, 926 (7th Cir. 2012).

81. Defendant Dorsey knew Defendant Michienzi was committing unlawful conduct and thereby violating the Fourth Amendment, and Defendant Dorsey had a realistic opportunity to intervene to stop the violation. *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2007).

82. Defendant Dorsey did not make a single attempt, either through oral statements or physical intervention, to prevent Defendant Michienzi from subjecting Plaintiff to an unlawful strip search or battering Plaintiff.

83. As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including pain and suffering.

## COUNT V—FIRST AMENDMENT RETALIATION

## 42 U.S.C. § 1983

84. Plaintiff realleges and incorporates all prior allegations made in this Complaint into this Count as if fully restated herein.

85. In the manner described more fully above, Defendants violated Plaintiff's rights as secured by the First Amendment of the U.S. Constitution. Plaintiff's complaints about the Village of Romeoville Officers' misconduct constituted protected speech and expression under the First Amendment.

86. In the manner described more fully above, Defendants' actions caused Plaintiff to suffer injuries that would chill a person of ordinary firmness from continuing to engage in protected activity.

87. Plaintiff's protected First Amendment Activity was a substantial motivating factor in Defendants' decision to take retaliatory action. The Defendant Officers would not have used excessive force on Plaintiff, unreasonably searched and seized Plaintiff, and would not have maliciously prosecuted Plaintiff in the absence of his protected First Amendment activity.

88. The misconduct described in this Count was objectively unreasonably and was undertaken intentionally, with reckless and deliberate indifference to the rights of Plaintiff, and in total disregard of the truth and of Plaintiff's clear innocence of any purported charges.

89. The Defendant Officers' actions were taken under color of law and within the scope of their employment.

90. As a result of Defendants' misconduct described in this Count, Plaintiff has suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth throughout this Complaint.

### COUNT VI—CONVERSION

### State Law Claim

91. Plaintiff realleges and incorporates all prior allegations made in this Complaint into this Count as if fully restated herein.

92. Plaintiff had a right to the iPhone 8 Plus and Motorola phones because they were his personal phones.

93. Defendant Michienzi took Plaintiff's phones into his possession.

94. Defendant Michienzi told Plaintiff that his phones were "lost."

95. As a result of Defendant's exercise of control over Plaintiff's property, Plaintiff, to this day, has never received back his phones.

### COUNT VII—MALICIOUS PROSECUTION

### State Law Claim

96. Plaintiff realleges and incorporates all prior allegations made in this Complaint into this Count as if fully restated herein.

97. Defendants caused Plaintiff to be subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

98. A cause of action for malicious prosecution must allege facts establishing the following: (a) the defendant brought the underlying suit, either in a criminal or civil judicial

proceeding against the claimant, maliciously and without probable cause; (b) the termination of the underlying judicial proceeding in favor of the claimant; (c) some "special injury" or special damage beyond the usual expense, time, or annoyance in defending the underlying suit. Swick v. Liataud, 169 Ill. 2d 504 (1996).

99. The individual Defendants accused Plaintiff of resisting a peace officer while knowing this accusation to be without probable cause.

100. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

101. As a result of this misconduct, Plaintiff was forced to attend court hearings on numerous occasions.

102. Upon information and belief, Defendant Michienzi failed to appear on multiple occasions, and the charges against Plaintiff were dismissed.

103. As a result of Defendant Michienzi's misconduct, Plaintiff sustained injuries, including suffering.

**COUNT VIII—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**State Law Claim**

104. Plaintiff realleges and incorporates all prior allegations made in this Complaint into this Count as if fully restated herein.

105. A claim exists for intentional infliction of emotional distress if the plaintiff can prove: (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant intended to cause or recklessly or consciously disregarded the probability of causing emotional distress; (3) that the plaintiff suffered severe or extreme emotional distress; and (4) that the defendant's conduct actually and proximately caused emotional distress. See *Public Finance Corp.*

*v. Davis*, 66 Ill. 2d 85, 89–90 (1976); *see also Doe vs. Calumet City*, 161 Ill. 2d 374 (1994). The plaintiff does not, however, need to establish a contemporaneous physical impact or injury. *Honaker v. Smith*, 256 F.3d 477 (7th Cir. 2000).

106. The acts and conduct of the individual Defendants as set forth above were extreme and outrageous. The individual Defendants intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff. This conduct included Defendant Michienzi swearing and yelling racial slurs at Plaintiff.

107. Such actions and conduct directly and proximately caused severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional distress.

108. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

109. As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including severe emotional distress and anguish.

**COUNT IX—AGAINST THE VILLAGE OF ROMEOVILLE: *MONELL***

110. Plaintiff realleges and incorporates all prior allegations made in this Complaint into this Count as if fully restated herein.

111. *Monell* claims establish liability against a City when the plaintiff can show that: (1) he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority; which (3) was the proximate cause of the injury. *See Levin v. Madigan*, 692 F.3d 607, 621 (7th Cir. 2012); *Ovadal v. City of Madison*, 416 F.3d 531, 535 (7th Cir. 2005).

112. At all times material to this Complaint, there existed in the Village of Romeoville the following practices, policies and customs:

    a. arbitrary use of excessive force against civilians;

    b. a code of silence in which police officers fail to report police misconduct;

    c. preparing false and incomplete police reports, and/or not preparing police reports, to cover up police misconduct including but not limited to unconstitutional searches and seizures;

    d. filing false charges and pursuing baseless prosecutions in order to protect police officers from claims of improper conduct and avoid liability;

    e. failing to adequately train, supervise and discipline police officers in the categories and fields of police work addressed above;

    f. failing to adequately investigate citizen complaints against police officers; and

    g. failing to adequately discipline police officers for misconduct.

113. The actions of the officer Defendants as alleged in this Complaint were done pursuant to, and as a result of, one or more of the above de facto practices, policies and customs of the Village of Romeoville, the Village of Romeoville Police Department, and its officers.

114. Specifically, in this case, Defendant Michienzi intentionally concealed or destroyed Plaintiff's cell phones, one of which Defendant Michienzi knew was being used to record his misconduct.

115. Defendant Michienzi reported that Plaintiff resisted his arrest, however, this report is false. Not only did Plaintiff remain unarmed and fully compliant during the entire arrest, but Defendant Michienzi's conduct of keeping his gun drawn and kicking Plaintiff to the ground are acts that were not in any way warranted based on Plaintiff's peaceful behavior.

116. Further, the Department allows its officers to insulate themselves from complaints from citizens, like Mr. Prince, by refusing and/or preventing citizens from filing complaints or reports of misconduct.

117. The municipal policy-makers of the Village of Romeoville acted with deliberate indifference in maintaining, overlooking and preserving the unconstitutional practices, policies and customs delineated above.

118. Defendant Village of Romeoville has failed to act to remedy a pattern of abuse so widespread it amounts to a custom or policy, and with actual knowledge of these and similar events. Defendant Village of Romeoville is thus the moving force behind Plaintiff's deprivation of rights.

119. Plaintiff's injuries were proximately caused by widespread unconstitutional practices, policies and customs within the department, which falls under the authority of the Village of Romeoville.

## JURY DEMAND

120. Plaintiff requests a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgement against the Defendants:

121. For compensatory damages as determined by the trier of fact to adequately compensate Plaintiff for the injuries describes in this Complaint;

122. For punitive damages as determined by the trier of fact to punish each Defendant against which they are awarded and to deter future similar conduct by that Defendant;

123. For Plaintiff's attorney's fees and costs incurred in prosecuting this action pursuant to 42 U.S.C. § 1983; and

124. For all other relief that this Court deems fair and equitable.

Dated: August 5, 2021 By: */s/ Jeffrey J. Mayer*
**Jeffrey J. Mayer**
Bar No. 06194013
jeffery.mayer@akerman.com
AKERMAN LLP
71 S. Wacker Drive, 47th Fl.
Chicago, IL 60606

**Ryan C. Krone**
Bar No. 24085750
ryan.krone@akerman.com
AKERMAN LLP
1300 Post Oak Boulevard, Suite 2300
Houston, TX 77056
(713) 960-7394 – Telephone
(713) 960-1527 – Fax
*Admitted Pro Hac Vice*

**ATTORNEYS FOR PLAINTIFF**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHAQUILLE PRINCE, ) | |
| ) | |
| Plaintiff, ) | Case No. 19-cv-7265 |
| ) | |
| vs. ) | Judge Robert Gettleman |
| ) | |
| SGT. MICHIENZI #357, et al., ) | Magistrate Judge Susan Cox |
| ) | |
| Defendants. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2021, I electronically filed the foregoing ***Second Amended Complaint***, with the Clerk of the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which will send notice to the CM/ECF participants.

**TO:** G. David Mathues
Michael D. Bersani
*Attorneys for Defendant*
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, Illinois 60143-3156
Phone: 630-773-4774; Fax: 630-773-4851
dmathues@hcbattorneys.com
mbersani@hcbattorneys.com

By: */s/ Jeffrey J. Mayer*
**Jeffrey J. Mayer**
Bar No. 06194013
jeffery.mayer@akerman.com
AKERMAN LLP
71 S. Wacker Drive, 47th Fl.
Chicago, IL 60606

**Ryan C. Krone**
Bar No. 24085750
ryan.krone@akerman.com
AKERMAN LLP
1300 Post Oak Boulevard, Suite 2300
Houston, TX 77056
(713) 960-7394 – Telephone
(713) 960-1527 – Fax
*Admitted Pro Hac Vice*
**ATTORNEYS FOR PLAINTIFF**

59169797;1