**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SHAQUILLE PRINCE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-7265 |
| | ) | |
| vs. | ) | Judge Robert Gettleman |
| | ) | |
| SGT. MICHIENZI #357, et al., | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO BIFURCATE AND STAY DISCOVERY AND TRIAL OF PLAINTIFF'S *MONELL* CLAIMS**

**INTRODUCTION**

A casual reader of Plaintiff's brief would think that motions to bifurcate and stay *Monell* claims are rarely granted. But there are at least a dozen reported cases granting such motions in this district within the last five years (Dkt. # 115, Defs.' Memo. re Bifurcation p. 5 n.2 (citing cases)). The most recent was less than two months ago. *Tate v. City of Chi.*, 2021 WL 4400982, at *1 (N.D. Ill. Sept. 27, 2021). Plaintiff's only engagement with that precedent is a one-sentence brushoff that those cases are "factually distinct" (Dkt. # 116, Pl.'s Resp. re Bifurcation p. 4). But it is the cases Plaintiff cites that are distinguishable, and Plaintiff's other arguments opposing bifurcation miss the mark. His argument about a potential split verdict is speculation, his profession to have narrowly targeted discovery belied by his supplemental discovery requests, and his claim that the risk of prejudice is irrelevant is against the weight of authority.

**ARGUMENT**

**I. PLAINTIFF RELIES ON INAPPLICABLE CASES.**

Given the numerous cases both granting and denying bifurcation motions, a closer examination of these different outcomes is helpful. But Plaintiff offers nothing more than a conclusory, one-sentence assertion that many of the cases the Defendants cite "are factually and

claim distinct" from this case (Dkt. # 116, Pl.'s Resp. re Bifurcation p. 4). Which cases? How are they distinguishable? Plaintiff never says. By contrast, the Defendants identified four reasons bifurcation motions are commonly denied (Dkt. # 115, Defs.' Memo. re Bifurcation pp. 12–13). Many of the cases Plaintiff cites fall into these very categories.

For example, Plaintiff relies on *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2010) and *Martinez v. Cook Cty.,* 2011 WL 4686438, at *1 (N.D. Ill. Oct. 4, 2011). But both of those cases are scenarios where the specific allegations created a reasonable chance of a split verdict, meaning a finding of municipal liability *without* individual liability. The *Martinez* plaintiff pleaded a theory that the inmate-on-inmate violence occurred not due to deliberate indifference by the correctional officer on the tier, but the municipal budgeting decision which left one officer watching multiple tiers.[1] *Martinez*, 2011 WL 4686438, at *1. The *Thomas* plaintiff offered a theory that the individual medical personnel tried to treat an inmate's health conditions but were unable because municipal procedures did not allow them to get the information needed in a timely fashion. *Thomas*, 604 F.3d at 304–05) In contrast, Plaintiff offers nothing more than a bare assertion of municipal liability without individual liability. It is telling that he doesn't even try to posit such a scenario under which this could happen. There isn't one. If Plaintiff's allegations were true (they aren't), they would compel individual liability.

Plaintiff also points to *Bouto v. Guevara,* 2020 WL 956294 (N.D. Ill. Feb. 27, 2020), but that is a case where the burden of discovery was far less because the relevant materials had already been produced in several similar cases. *Id.* at *2. This key consideration is not present here.

---

[1] *See* The Hon. David F. Hamilton, *The Importance and Overuse of Policy and Custom Claims: A View from One Trench*, 48 DePaul L. Rev. 723 (1999). The author suggests that "in a substantial portion" of cases, *Monell* claims have "little practical significance," *id.* at 729, and that bifurcation orders should "be routinely available" for many of the reasons in Defendants' initial brief. *Id.* at 733. But the author notes that one of the few exceptions is when the injury is fairly traceable to a municipality's budgeting decision rather than some employee's individual behavior. *Id.* at 735. That was the scenario in *Thomas* and *Martinez*, but it is not so here.

Another inapplicable precedent Plaintiff repeatedly cites is *Est. of McIntosh v. City of Chi.*, 2015 WL 5164080 (N.D. Ill. Sept. 2, 2015). But in *McIntosh*, discovery requests had not yet been issued. The Court was left to guess at how discovery might play out and the efficiencies (or lack thereof) of bifurcation because it did not have specific discovery requests to evaluate. *Id.* at *8. That is why the motion to bifurcate was denied as "premature." *Id.* at 10. But here, because Plaintiff's discovery requests have been issued, the Court can see they are a costly and expansive fishing expedition.

What is more, *McIntosh* "direct[ed] the parties to defer discovery on the *Monell* claim until after the completion of fact discovery on the claims against Defendant Officers." *Id.* This ruling was functionally a partial grant of the bifurcation motion. The same outcome happened in *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 898 (N.D. Ill. 2000), which Plaintiff cites four times.

In short, assertion is no substitute for argument. The Defendants have demonstrated which way precedent points; the Plaintiff has not.

## II. ALL THREE RULE 42(B) INTERESTS FAVOR BIFURCATION.

### A. Convenience

Plaintiff disputes that bifurcation will promote convenience, primarily by arguing that his *Monell* claims could succeed even if his claims against Sgt. Michienzi and Detective Dorsey fail. Again, Plaintiff has not explained how this could occur other pointing to the qualified immunity issue. This underscores the degree of speculation to which he is resorting in order to keep his tactically advantageous discovery bludgeon. As covered in more detail above, the allegations in cases which rely on possible "split verdict" to deny bifurcation are not present here.

As to the Defendants' pleading of a qualified immunity defense, that does not always warrant denying bifurcation. *See, e.g., Saunders v. City of Chi.*, 146 F. Supp. 3d 957, 970 (N.D. Ill. 2015) (weighing all factors and granting bifurcation despite "qualified immunity scenario" posited by

3

plaintiffs). Also, Plaintiff's reference to a jury finding for the officers based on qualified immunity is odd. Judges, not juries, almost always decide this issue.

More to the point, while Defendants have certainly pleaded that defense and do not waive their right to bring a dispositive motion based on qualified immunity, if the deposition testimony takes an unexpected turn, Plaintiff's complaint alleges egregious, intentional misconduct that makes a finding for (or dispositive motion based on) qualified immunity unlikely. One can easily posit allegations where a qualified immunity argument appears likely from the outset (say a grey area involving a search warrant). But this is not such a case. And even if it was, Plaintiff would then be free to pursue his *Monell* claim. But this remote possibility does not outweigh the high probability that granting this motion will promote the "convenience" Rule 42(b) favors.

### B. Prejudice

Plaintiff says that the availability of limiting instructions and motions in limine and other (unidentified) methods sufficiently mitigate any risk of unfair prejudice to the individual Defendants. This argument proves too much; if it were correct, "prejudice" would never be a reason to grant bifurcation. A five-minute search on Westlaw shows otherwise and that courts repeatedly point to unfair prejudice as a reason for bifurcation. *See, e.g.*, *Bradford v. City of Chi.*, 2019 WL 5208852, at *3 (N.D. Ill. Oct. 16, 2019); *Carr v. City of N. Chi.*, 908 F. Supp. 2d 926, 935 (N.D. Ill. 2012).

This concern is not boilerplate or speculative but obvious from the Plaintiff's discovery requests, inherent in introducing the alleged bad acts of non-parties at trial, and a driving force in many decisions granting bifurcation. *Bradford*, 2019 WL 5208852, at *3 (citing five other cases where concern about "guilt by association" prejudice played a major part in granting a bifurcation motion). Limiting instructions have their place and, as Plaintiff says, that the law presumes juries follow such instructions. But it is equally true that one cannot un-ring a bell at trial. Limiting instructions are a poor substitute for keeping unfairly prejudicial evidence out in the first place. In other words,

"limiting instructions might be used as an alternative, they are not likely to be a satisfactory solution in most cases." Hon. David F. Hamilton, *The Importance and Overuse of Policy and Custom Claims: A View from One Trench*, 48 DePaul L. Rev. 723, 732 (1999).

Plaintiff also tries to turn the tables, claiming that *he* will be prejudiced if bifurcation is granted, because if he wins against the individual officers, he will likely be deprived of non-monetary benefits to his *Monell* claim. This argument has largely proven unsuccessful for plaintiffs opposing bifurcation (when bifurcation is denied, it is typically for other reasons) and should be rejected here.

For one thing, Plaintiff's professed non-monetary goals of accountability and deterrence are sufficiently accomplished through the fact that the Village is on the hook for a judgment against the individual officers. That is the deterrence the law permits when a plaintiff seeks only monetary damages. If Plaintiff wanted injunctive relief, he should have pleaded it. An earlier opinion puts it well: [t]he idea that the Supreme Court requires some extra incentive to deter cities from allowing their employees to violate rights is inconsistent with its policy of immunizing cities from punitive damages." *Parker v. Banner*, 479 F. Supp. 2d 827, 829 (N.D. Ill. 2007).

For another, Plaintiff's argument contradicts itself. Plaintiff contends that a *Monell* claim is not moot if the municipality agrees to pay all compensatory damages but in the next paragraph claims that bifurcation amounts to a *de facto* dismissal of his *Monell* claim—by making it moot (Dkt. # 116, Pl.'s Resp. re Bifurcation pp. 11–12). This incoherence reveals the untenable nature of his position. To the extent Plaintiff wants some kind of emotional satisfaction from a judgment that includes the Village, that is not a legitimate basis for a suit under the federal Constitution and not a reason to deny bifurcation. *Parker*, 479 F. Supp. at 834.

### C. Judicial Economy

This factor is primarily about discovery and the burden it puts on litigants and courts. Plaintiff contends the burden is limited because he has trimmed his requests, as reflected in a

5

discovery letter dated September 3, 2021. He professes that he is looking only for documents related to complaints against officers related to excessive force, false arrest, inadequate training, and inability to file a complaint (Dkt. # 116, Pl.'s Resp. re Bifurcation p. 8).

This profession is misleading at best, because while Plaintiff attaches the September 3, 2021, discovery letter to his brief, he does not attach a copy of the *additional* discovery requests he sent less than two weeks later. One of those supplemental requests reads as follows:

> 49. Copies of **any and all files related to citizen complaints against any officer** of the Village of Romeville Police Department during the last five years, including but not limited to the complaint, investigation into the complaint, and the imposition of any discipline resulting from the complaint.

(Dkt. # 115-2, Defs.' Memo. re Bifurcation, Ex. B (emphasis added)). This request covers *all* documents related to *all* complaints, not merely the topics listed in the discovery letter.

Moreover, a careful reading of the September 3, 2021, discovery letter shows that the offered limitation applies only to *one* of the disputed requests, # 44. It does not apply to # 45, which seeks "*all*" records and documents related to, among many other things, "complaints of officer misconduct" and "discipline of officers" (*Cf.* Dkt. # 115-2, Defs.' Memo. re Bifurcation, Ex. B *with* Dkt. # 116, Pl.'s Resp. re Bifurcation pp. 8–9)). Request # 45 is *not* limited in any way and thus, contrary to Plaintiff's brief, *would* cover complaints about officers being rude or misusing sick leave that Plaintiff has conceded are not relevant. Plaintiff's purported narrowing of discovery is hollow. The scope and burden of discovery is every bit as broad as Defendants explain in their opening brief—which the Court can see for itself by looking at the requests.

Plaintiff also tries to put the Defendants in a Catch-22, positing that *either* the Defendants have only a few relevant documents, in which case the discovery burden is small and the benefits of bifurcation miniscule, *or* the Village is sitting on a pile of documents showing its police department is full of scoundrels, in which case Plaintiff's need for the evidence is crucial, and bifurcation

improper. This verbal trap overlooks the practical reality that the process of searching for and identifying any responsive documents is the bulk of the discovery burden.

This is all the more so given the true scope of Plaintiff's *Monell* requests, which by no means is limited to alleged retaliation against citizens who file complaints against police officers. Indeed, while Plaintiff's arguments against bifurcation lean heavily on the retaliation claim, this a misdirection tactic; the alleged retaliation is only a small part of the *Monell* claim he pleaded and the *Monell* discovery he seeks. For bifurcation purposes, the tail should not wag the dog.[2]

## CONCLUSION

"Motions to bifurcate *Monell* claims are frequently granted in this District because such claims typically require a significant amount of work—including expert discovery—that may ultimately be for naught because in many, if not most cases, disposition of the individual claims will either legally or practically end the litigation." *Bradford*, 2019 WL 5208852, at *2 (citations omitted). This case fits that pattern and calls for the same result. The Defendants respectfully ask that their motion be granted.

Respectfully submitted,

**s/G. David Mathues**
MICHAEL D. BERSANI, Bar No. 06200897
G. DAVID MATHUES, Bar No. 06293314
*Attorneys for Defendants*
HERVAS, CONDON & BERSANI, P.C.
333 W. Pierce Road, Suite 195
Itasca, IL 60143-3156 P: 630-773-4774
mbersani@hcbattorneys.com
dmathues@hcbattorneys.com

---

[2] Notably, Plaintiff has *never* offered to limit his *Monell* discovery to instances of alleged retaliation against someone who filed (or attempted to file) a complaint against a police officer.

7

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHAQUILLE PRINCE, ) | |
| ) | |
| Plaintiff, ) | Case No. 19-cv-7265 |
| ) | |
| vs. ) | |
| ) | Honorable Robert W. Gettleman |
| SGT. MICHIENZI #357, et al., ) | Magistrate Judge Susan E. Cox |
| ) | |
| Defendants. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on **November 15, 2021**, I electronically filed the foregoing ***Defendants' Reply in Support of their Motion to Bifurcate and Stay Discovery and Trial of Plaintiff's Monell Claims,*** with the Clerk of the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which will send notice to the following CM/ECF participants:

TO:  Jeffrey J. Mayer  
       Akerman LLP  
       71 South Wacker Drive  
       47th Floor  
       Chicago, IL 60606  
       jeffrey.mayer@akerman.com

Ryan C. Krone  
Akerman LLP  
1300 Post Oak Blvd.  
Suite 2500  
Houston, TX 77056  
ryan.krone@akerman.com

           **s/ G. David Mathues**
           Michael D. Bersani, ARDC No. 06200897
           G. David Mathues, ARDC No. 06293314
           *Attorneys for Defendants*
           HERVAS, CONDON & BERSANI, P.C.
           333 Pierce Road, Suite 195
           Itasca, Illinois 60143-3156
           Phone: 630-773-4774; Fax: 630-773-4851
           mbersani@hcbattorneys.com
           dmathues@hcbattorneys.com