**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHAQUILLE PRINCE, ) | |
| ) | |
| Plaintiff, ) | Case No. 19-cv-7265 |
| ) | |
| vs. ) | Judge Robert Gettleman |
| ) | |
| SGT. MICHIENZI #357, et al., ) | Magistrate Judge Susan E. Cox |
| ) | |
| Defendants. ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL

### INTRODUCTION

Plaintiff's motion to compel seeks documents well beyond what is relevant and proportional to this case. The motion takes positions at odds with Plaintiff's own production and misrepresents the parties' discussions about disputed discovery. Plaintiff ignores the limits of his own allegations, and the discovery produced so far. He offers no case granting a motion to compel on similar facts. Thus., the Defendants respectfully ask that the motion be denied.

### ARGUMENT

I. **BACKGROUND.**

A. **The Allegations.**

This case arises out of Plaintiff's visit to the Romeoville Police Department ("RPD") on December 21, 2018. It is one of Plaintiff's three active §1983 cases in this courthouse, and in each he is represented by recruited counsel from a large law firm.[1] (*See* Dkt. # 62, Minute Order, 11/18/20) In this case, Judge Gettleman recently granted the defense's motion to bifurcate and stay the *Monell* claim and directed that fact discovery be done by mid-April 2022. (Dkt. # 118, Order, 12/02/21)

---

[1] *See Prince v. Soderstrom, et al.*, 1:19-cv-07270 (N.D. Ill.); *Prince v. Arndt, et al.*, 1:20-cv-05847 (N.D. Ill.) A search on PACER reveals additional cases that have since been dismissed.

Plaintiff's allegations here regarding alleged excessive force, unlawful arrest, seizure of his phones, and retaliatory motives, (*See generally* Pl.'s 2nd Amended Complaint ("2AC") 08/05/21), are simply allegations at this point. The Defendants deny most of them. (*See* Defs.' Answer to 2AC ¶¶ 17–18, 25–26, 44–49) While Plaintiff has a right to make allegations and to file suit, the statement in his motion that "[t]he case is about Defendants' excuses for its admitted actions," (Pl.'s Mot. to Compel p. 2 ("Pl.'s MTC"), is untrue, and his counsel's opinion about what "the evidence demonstrates" is irrelevant. (*See* Seventh Circuit Pattern Jury Instruction 1.06)

Equally important for purpose of this motion is what Plaintiff does *not* allege. His companion on the day of the incident, Selena Anderson ("Individual A") is not a plaintiff. There are no alleged violations of her rights or denial that she had an active warrant. Plaintiff also does not allege in his complaint—and did not identify in his deposition—any unidentified Village employees who either allegedly violated his rights or were present for the alleged actions of the named defendants. Indeed, this bears repeating: Plaintiff does not allege that any Village employee other than named defendants Michienzi and Dorsey acted wrongfully.

### B. The Discovery to Date.

To date Defendants have produced over 2600 pages of documents. (*See* Ex. A, Defs.' Resp. to Pl.'s 2nd RFP (giving Bates stamps). These include all police reports for the incident, audio of radio traffic, the only squad car video, the individual defendants' personnel, discipline, and training records, RPD policies and procedures, and documents obtained via subpoena.

In contrast, Plaintiff has produced six pages, all with his initial Rule 26 disclosures when represented by his former counsel. (Ex. B, Pl.'s Initial Rule 26(a) Disclosures) These consisted of a copy of the same police report Defendants produced, and two cell phone videos which Plaintiff

2

took and managed to recover notwithstanding his allegations that Officer Michienzi took Plaintiff's cell phones to destroy evidence.[2] (2AC ¶ 48)

Notably Plaintiff produced no documents relating to psychiatric or psychological treatment or counseling relating to the incident. (Ex. C, Pl.'s Amended Resp. to RFP ## 5, 6; *see also* Ex. D, Pl.'s Amended ATI # 9 (declining to identify any health care provider who diagnosed or treated Plaintiff) Plaintiff did this even though, as he testified in his deposition, he has been receiving counseling and mental health services for alleged injuries he attributes to this incident. The upshot is that discovery has been entirely one-sided. Plaintiff's push for more documents is not warranted.

## II. STANDARD OF REVIEW.

A district court has broad discretion in discovery matters and its decisions are reviewed only for an abuse of discretion. *James v. Hyatt Regency Chic.*, 707 F.3d 775, 784 (7th Cir. 2013). The Federal Rules of Civil Procedure allow discovery of

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). This standard exists to avoid "trial by ambush," but it is not "a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest."

---

[2] Plaintiff maintains he took several videos documenting Officer Michienzi's misconduct, which he streamed to Facebook Live. But he testified at his deposition that he "cannot recall" the Facebook account name, associated email address or phone number, or any other identifying information about the social media account to which he allegedly posted this blockbuster evidence. Nor can he "recall" the phone number of the phone he supposedly used until it was allegedly confiscated by Officer Michienzi. Plaintiff claimed in his deposition that once he got home on the evening of the incident, he downloaded one video from his iTunes account, and saw that there were other videos from the incident, but he was inexplicably "locked" out of this account before he could download the other videos. True to form, Plaintiff "cannot recall" any identifying information about this iTunes account, or what steps, if any, he took to attempt to unlock this account and access these supposedly critical videos. Plaintiff makes much of reserving the right to file a motion for spoliation or sanctions for failure to preserve evidence; suffice it to say that the Defendants reserve the same right in light of Plaintiff's testimony.

3

*BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 2018 WL 946396, at *3 (N.D. Ill. Feb. 20, 2018) (Cole, J.).

Rather, "[p]arties are entitled to a reasonable opportunity to investigate the facts—and no more." *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. Mar. 9, 1994). Principles of relevance, proportionality, and a realistic understanding of the costs of discovery and risks of abuse warrant limiting discovery. *BankDirect*, 2018 WL 946396, at **3–6. Indeed, the 2015 amendments to Rule 26 "emphasize" the role of proportionality, and the need to apply "common sense" when judging proportionality. *Saleh v. Pfister*, 2021 WL 326361, at *3 (N.D. Ill. Feb. 1, 2021).

A "common sense" application of proportionality looks at the facts of the case, not merely the abstract right asserted. *Id.* "Proportional" discovery in a wrongful death case will be different from "proportional" discovery in a case alleging a sprained ankle. This case is closer to the second of these poles. Plaintiff denies (or at least has not disclosed) any medical treatment for alleged physical injuries. (Ex. D, Pl.'s Amended ATI # 8) And, the operative complaint concedes that Plaintiff was released from police custody after only "several hours." (2AC ¶ 56)

### III. THE DISPUTED DISCOVERY.

Plaintiff's motion goes well beyond materials to which Plaintiff is entitled as part of a "reasonable opportunity to investigate the facts" in proportion to the needs of the case. It also misunderstands the difference between refusing to produce items and refusing to take additional steps to search for items the Defendants have no reason to believe exist and did not find in their earlier search attempts. Plaintiff's demands will be addressed in reverse order.

As a threshold matter, Plaintiff's carping about boilerplate objections deserves no weight in light of Plaintiff's own discovery responses. (*See* Ex. C, Pl.'s Amended Resp. to RFP; Ex. D, Pl.'s Amended ATI) For example, of the 34 RFPs sent by the defense, Plaintiff gives the same objection as "vague, ambiguous, and ill-defined" more than a dozen times, and uses variants of the same

4

words at least another dozen times. (Ex. C, Pl.'s Amended Resp. to RFP) Plaintiff's ATI responses show the same pattern, repeatedly throwing out rote objections, such as "fails to identify the materials sought with sufficient particularity" and "harassing," without context. (Ex. D, Pl.'s Amended ATI) This "wrong for thee, fine for me" attitude should not be rewarded.

### A. The Attendance Sheets (RFP # 40).

Plaintiff claims that he needs the attendance sheets for the entire RPD for the day of the incident in order to identify "potential witnesses." The key word is "potential." Plaintiff's initial disclosures, discovery responses, and discovery communications do not even hint at any unidentified "John/Jane Does" who are alleged to either have done something improper or witnessed the alleged improper actions of others. Plaintiff did not identify any such persons in his deposition. If there were such a known but unidentified person, this request would seek relevant information. But there is not. The names of every employee of the Romeoville PD who worked that day are irrelevant. Plaintiff cites no case on point to justify this fishing expedition.

### B. Irrelevant and Non-Existent Video (RFP # 15).

Plaintiff claims that the Defendants have "cherry picked a select few dash cam videos" and "are refusing to produce perhaps the most important video in their possession." (Pl.'s MTC p. 9) Both parts of this statement are incorrect. The Defendants produced the one dash camera video they have, along with police radio transmissions, back with their initial Rule 26(a) disclosures in September of 2020. There is no cherry picking of anything in their possession. Plaintiff has nothing more than his own unfounded speculation that any other video exists, and the video on which he is most fixated, if it was ever created, is irrelevant to his claims and defenses.

Given the ever-increasing prevalence of video in law enforcement and in society at large, some explanation is in order. There is no bodycam footage because the Village did not have police body cameras at the time. Sgt. Michienzi and Officer Dorsey were inside the police station or on

5

foot in the vicinity of the police station during the incident, so they have no squad car video. The arrest and alleged use of force took place in a wooded area, so no surveillance camera captured the incident.

Romeoville PD's Technical Support Specialist, Dave Dabrowski, searched for any video associated with this incident back in June 2019, likely in response to either a subpoena in the criminal case against Plaintiff arising from this incident, or a FOIA request from Plaintiff. This is referenced in one of the initial police reports disclosed to Plaintiff, and Plaintiff will have the opportunity to question Dabrowski at his upcoming deposition about this matter. The only video Dabrowski located is the one that was produced, which shows Officer Jones' squad car driving around the Romeoville PD grounds when he was attempting to help Officers Michienzi and Dorsey locate Plaintiff.

Defendants believe that surveillance video from inside the police station might have captured some of the interaction between Plaintiff and Selena Anderson when they first entered the department. If so, that video was overwritten within a few months of being captured. It was not marked for preservation as part of the parallel criminal case because it would not have shown anything relevant to the offense, or the warrant, pursuant to which Plaintiff was arrested. It would have been relevant to this case, but the initial complaint was not filed until more than a year after the incident, by which time the video was long since overwritten. Plaintiff may claim that the Defendants should have known this video would be evidence and preserved it, to which the Defendants would answer that they had no reason to believe it would become relevant later because they did not expect Plaintiff to fabricate a First Amendment retaliation claim. Regardless, the Defendants cannot produce something that has not been in existence for several years.

As to any video of Officer Jones arriving at the police station on the day of the incident, no such video was located back in 2019 when TSS Dabrowski looked for videos associated with the

6

incident, none was located when the Defendants responded to discovery, and, as counsel for the Defendants *repeatedly* told Plaintiff's counsel during this discovery dispute, the Defendants have no reason to think such a video would have been created.

But given Plaintiff's obvious attempt to manufacture a spoliation claim, the irrelevance of such a hypothetical video needs to be emphasized. The observations by Officer Jones (not a party) of the car driven by Selena Anderson (not a party) are irrelevant. Officer Jones' location, at a time he is not alleged to have done anything to Plaintiff, is not relevant. Whatever observations led Officer Jones to run the license plate on Anderson's car through a police database—and thereby learn that the registered owner was Ms. Anderson and that she had active arrest warrants, are irrelevant.

This is in part because neither of those people is a party to the case. It is also because the motivations of Officer Jones (or anyone else) in detaining Selena Anderson are legally irrelevant because the Fourth Amendment standard for unlawful detention is purely objective. *Whren v. United States*, 517 U.S. 806, 813 (1996). Indeed, police offices do not need to have any level of initial suspicion before running a car's license plate through a law enforcement database to check for information on the registered driver. *See Kansas v. Glover*, 140 S. Ct. 1183, 1186 (2020). Thus, because whatever triggered Officer Jones to run Ms. Anderson's license plate is constitutionally irrelevant, any video that would corroborate or contradict Officer Jones' recollection as to why he ran the plate is also irrelevant—especially because, again, neither of them is a party. This part of the motion should be denied on both mootness and the merits.

### C. Social Media Posts, Text Messages, Voicemails, and Emails (RFPs 5, 7, 42, and 43)

Plaintiff's request for social media posts, text messages, and emails about the incident may sound reasonable on its face. But beneath the surface, Plaintiff is actually seeking much more, such as the call logs from the individual defendants' cell phones. (*See* Pl.'s MTC pp. 7–8) Moreover, nowhere is Plaintiff's motion more at odds with his own discovery responses than here.

7

*Social Media Posts.* The Defendants do not have any social media posts about the incident or Plaintiff to produce for the simple reason they did not make any such posts. This goes for the Village as an entity, individual defendants Michienzi and Dorsey, and the other Village employees Plaintiff has set to depose.[3] Unlike Plaintiff, who alleges he streamed essential and damning video proving his allegations to Facebook Live (2 AC ¶ 38) but somehow "cannot recall" anything about the social media account to which he posted this video, or what, if anything, he did to try and access that account later after it was supposedly mysteriously locked, or whether anyone ever contacted him about his supposedly extreme example of police misconduct he posted to Facebook Live, the Defendants straightforwardly deny making any social media posts. Plaintiff may not believe this testimony, but the Court cannot order the production of something that never existed based solely on Plaintiff's uncorroborated suspicions. *Formax, Inc. v. Hostert,* 1989 WL 118004, at *2 (N.D. Ill. Sept. 27, 1989) ('The court cannot order something produced that does not exist."); *see also Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, 2010 WL 3119487, at *5 (N.D. Ind. Aug. 5, 2010) ("District courts routinely deny motions to compel the production of documents when the non-moving party represents that such documents do not exist.").

*Text Messages and Voicemails.* The short answer here, as with social media posts, is that there are none, because the Village, Michienzi, Dorsey, and the other employees present for some part of the incident did not text or send voicemails about the incident or about Prince.

The longer answer concerns the individual defendants' cell phone call logs for the 48 hours after the incident, which the Defendants object to producing on grounds of undue burden, limited relevance, and harassment. The blunt truth is that Plaintiff, in addition to seeking to compound the defendants' costs and hassle, is trying to pry into their personal cell phone records, despite lacking

---

[3] While as of the parties' video conference on February 2, 2022, counsel had only asked Michienzi and Dorsey about sending or receiving text messages or posting to social media about the incident, counsel has since asked the other identified witnesses, and been told unambiguously "no."

anything more than speculation that Michienzi and Dorsey used their cell phones to discuss anything related to this case, on the off chance of digging up potentially impeaching evidence. Plaintiff has not cited, and the Defendants did not locate, any case in this district ordering police officers to produce their personal cell phone call logs, let alone when there is no evidence the officers used their personal cell phones for anything related to the case.

Plaintiff brushes off the Defendants objections about harassment and burden, but Plaintiff takes a different position as to his own cell phone. Unlike the Defendants, for which there is no evidence they used their personal cell phones, Plaintiff's complaint makes repeated and explicit allegations about using his cell phone to record part of the incident. This makes his phone call and text logs far more relevant. And yet, when the Defendants asked for his call and text logs simply for the day of the incident, Plaintiff objected to the request as "unduly burdensome, vague, ambiguous, and harassing." (Ex. C, Pl.'s Amended Resp. to RFP # 26) At a minimum, either Plaintiff's objections are without merit, or this part of his motion is without merit. Beyond that, because Plaintiff has nothing beyond speculation to connect the officers' cell phones to this incident, and the officers, unlike Plaintiff, are not expressly claiming to have used their phones to communicate about this incident, Plaintiff's request should be denied.

*Emails*. The Village's IT manager searched the Village's email servers for any mention of Plaintiff's name (first or last) or the case numbers associated with this incident. This happened more than two years ago, in the summer of 2020. The search returned only a handful of responsive emails which have been produced to Plaintiff. Plaintiff's dissatisfaction with this outcome does not entitle him to demand further searches, particularly in light of the fact that the limited result from the first search indicates that the odds of finding documents relevant to the claims or defenses of either party from some other search terms are low.

9

Conducting an email search is particularly burdensome because the Village's IT department has limited ability to narrow the scope of any search with Boolean connectors of the sort one would use on Westlaw. A separate search for "Selena" and "Anderson" which Plaintiff insisted on in the parties' discovery dispute call, would return every time either of those words were mentioned within the time frame searched—potentially hundreds, if not thousands, of documents which would require review. *Cf. Arrington v. City of Chi.*, 2018 WL 3861552, at *2 (N.D. Ill. Aug. 14, 2018) (noting, in context of burden of discovery, that claims that information could be located with "only keystrokes" ignores burden of sorting through responses). The IT department cannot narrow the search by, for example, only looking for "Selena" within the same sentence as "Anderson."

Ms. Anderson is a witness to part of the incident and may have relevant testimony as to Plaintiff's alleged injuries and after-incident statements. But that does not make the additional email search Plaintiff wants proportional to the needs of the case in light of the factors listed in Fed. R. Civ. P. 26(b)(1). Rather, it is a "blind attempt to find something useful for their impeachment" attempts, with the side bonus of driving up Defendants' discovery costs. *Hespe v. City of Chicago*, 2016 WL 7240754, at *5 (N.D. Ill. Dec. 15, 2016) (quotations omitted).

## CONCLUSION

For all the reasons listed above, the Defendants respectfully ask that this Court deny Plaintiff's Motion to Compel.

Respectfully submitted,

s/G. David Mathues
MICHAEL D. BERSANI, Bar No. 06200897
G. DAVID MATHUES, Bar No. 06293314
*Attorneys for Defendants*
HERVAS, CONDON & BERSANI, P.C.
333 W. Pierce Road, Suite 195
Itasca, IL 60143-3156 P: 630-773-4774
mbersani@hcbattorneys.com
dmathues@hcbattorneys.com

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SHAQUILLE PRINCE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-7265 |
| | ) | |
| vs. | ) | Judge Robert Gettleman |
| | ) | |
| SGT. MICHIENZI #357, et al., | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on **February 15, 2022**, I electronically filed the foregoing ***Defendants' Response to Plaintiff's Motion to Compel,*** with the Clerk of the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which will send notice to the following CM/ECF participants:

TO: Jeffrey J. Mayer
Akerman LLP
71 South Wacker Drive
Suite 47th Floor
Chicago, IL 60606
Jeffrey.mayer@akerman.com

Ryan C. Krone
Akerman LLP
1300 Post Oak Blvd.
Suite 2500
Houston, TX 77056
ryan.krone@akerman.com

**s/ G. David Mathues**
Michael D. Bersani, ARDC No. 06200897
G. David Mathues, ARDC No. 06293314
*Attorneys for Defendants*
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, Illinois 60143-3156
Phone: 630-773-4774; Fax: 630-773-4851
mbersani@hcbattorneys.com
dmathues@hcbattorneys.com

11