UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAQUILLE PRINCE, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 19-cv-7265 |
| | ) Judge Robert Gettleman |
| SGT. MICHIENZI #357, et al., | ) Magistrate Judge Susan Cox |
| Defendants. | ) |

**PLAINTIFF'S MOTION TO VACATE RULING
BIFURCATING *MONELL* DISCOVERY**

The Village of Romeoville ("the Village") established and/or followed policies, procedures, customs and/or practices (hereinafter collectively referred to as "policy" or "policies"), which violated Plaintiff's constitutional rights granted to him pursuant to 42 U.S.C. § 1983, as well as the case of *Monell v. New York City Department of Social Services* (1978) 436 U.S. 658, including those under the First Amendment. The Village's policies are intrinsically entangled with the operative facts of this case, and therefore, a jury cannot fully evaluate the claims and defenses without also evaluating the policies at issue. The evidence demonstrates that the Village permitted its employees to engage in a clear and persistent pattern of illegal, unconstitutional activity including, but not limited to, ignoring citizen complaints, discouraging citizen complaints, running a citizen's name through a warrant database simply because they tried to file a complaint, and unlawfully arresting citizens because of their attempts to file a complaint. The Village was on actual or constructive notice of its employees' clear and persistent illegal conduct, as evidenced, in part, by the fact that it was a common occurrence for citizens to have their name ran through warrant databases if a citizen wanted to file a complaint against a Village officer. In other words, the Village conspired to protect its officers from complaints of misconduct by blatantly ignoring

complaints that were filed, failing to investigate complaints that were filed or were attempted to be filed, and intimidating and arresting citizens who tried to file a complaint.

After extensive discovery, there is direct evidence of the Village's unconstitutional policies. Additionally, there are numerous reasons why Plaintiff should be allowed to complete targeted *Monell* discovery: (1) Plaintiff's *Monell* claim is distinct from the individual claims because the municipality's liability is not dependent on the claims against its officer; (2) judicial economy strongly favors conducting the trial in one suit; and (3) bifurcation prejudices Plaintiff because there are legitimate non-economic motivators to pursue the *Monell* claim and bifurcation acts as a de facto dismissal of the *Monell* claim.

As described below, Plaintiff is seeking targeted, narrowly-tailored discovery that is not unduly burdensome on Defendants. Indeed, Plaintiff is not asking this Court to grant open-ended *Monell* discovery, and in fact, Plaintiff is not even seeking *Monell* discovery on his excessive force and related claims in this Motion. Plaintiff is merely seeking *Monell* discovery on his First Amendment Retaliation claim. There is no reason to believe that given the small size of the Village that Plaintiff's requests identified below would involve extensive discovery. Additionally, Plaintiff believes any potential discovery disputes could be resolved quickly and effectively by the Magistrate Judge. For all of these reasons, as set forth more fully below, Plaintiff should be permitted to conduct the targeted, narrowly tailored *Monell* discovery identified below.

## I. PROCEDURAL BACKGROUND

On December 11, 2019, Plaintiff filed this civil rights action against the Village of Romeoville and certain police officers. (Complaint, Dkt. 8). On August 5, 2021, Plaintiff filed his Second Amended Complaint ("Complaint") alleging claims under Section 1983 and Illinois State law against Defendants. (2nd Am. Complaint, Dkt. 105). On October 22, 2021, Defendants filed a Motion to Bifurcate and Stay Discovery and Trial of Plaintiff's *Monell* Claims. (Motion to

Bifurcate, Dkt. 114). Defendants' Motion to Bifurcate essentially made three arguments: (1) bifurcation will promote convenience by avoiding needless discovery time and costs; (2) bifurcation will conserve judicial resources; and (3) bifurcation will avoid prejudice to officers Michienzi and Dorsey. (*See* Memo in Support of Motion to Bifurcate, Dkt. 115). On November 5, 2021 Plaintiff filed his Response in Opposition to Defendants' Motion to Bifurcate (Response in Opposition, Dkt. 116), and on November 15, 2021, Defendants filed their Reply in Support of Motion to Bifurcate. (Reply in Support of Motion to Bifurcate, Dkt. 117). On December 2, 2021, a telephonic hearing was held before the Honorable Robert W. Gettleman, and Defendants' Motion to Bifurcate and Stay Discovery was granted (Dkt. 118).

The parties have now completed discovery, and on September 22, 2022, the parties appeared before Judge Gettleman for a telephonic hearing. Plaintiff's counsel requested that the Court reconsider its order on Defendants' Motion to Bifurcate and Stay Discovery. Judge Gettleman ordered Plaintiff's to file this Motion to Vacate the Court's December 2, 2021 Order Bifurcating *Monell* Discovery. (Dkt. 148).

## II. FACTUAL BACKGROUND

On December 21, 2018, Plaintiff Shaquille Prince entered the Romeoville Police Station with a friend, Selena Anderson, to file a complaint against an officer regarding an instance of unlawful force on January 25, 2018, and to retrieve the results of a related FOIA request. (2nd Am. Compl. ¶ 2). Mr. Prince and Ms. Anderson were provided with FOIA results by a receptionist at the Department, and were then referred to Defendant Officer Michienzi to file a complaint. (*Id.* ¶¶ 14-16). Rather than assisting Mr. Prince, Officer Michienzi refused to advise him of how to file a complaint, refused to provide him with a complaint form, and generally discouraged Mr. Prince from filing any grievances. (*Id.* ¶¶ 17-18).

After being denied assistance, Mr. Prince and Ms. Anderson left the Department. (*Id.* ¶ 19). Before they could drive away however, Officers Michienzi and Jones arrested Ms. Anderson on a prior in-state warrant. (*Id.* ¶¶ 20-22). Unable to drive home, Mr. Prince confirmed with Officer Michienzi that he was not under arrest and then walked away from the Station. (*Id.* ¶¶ 23, 27-31). After walking for some time, Mr. Prince was confronted by Officer Michienzi again. (*Id.* ¶ 33-34). At this time, Officer Michienzi drew his gun on Mr. Prince, confiscated his phones, took the FOIA results, and strip searched him while still in the woods. (*Id.* ¶¶ 34-41). Defendant Officer Dorsey arrived on the scene during the strip search and did not intervene in the humiliating, unnecessary search, nor did he intervene when Officer Michienzi later kicked Mr. Prince while in handcuffs on the ground. (*Id.* ¶¶ 42-47). On the ride back to the station, Officer Michienzi explicitly told Mr. Prince the abuse was a retaliation for his attempts to file a complaint. (*Id.* ¶ 53). After being held for several hours, Mr. Prince was released, and was yet again refused the right to file a complaint for the events that had just occurred. (*Id.* ¶¶ 57-58). Mr. Prince's phones and the FOIA request results were never returned to him. (*Id.* ¶¶ 52, 56).

### III.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 42(b), the court may order separate trials for separate issues or claims for the sake of "convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Although only one of the criteria need be met in order to justify separate trials, the court must make certain that doing so will not unfairly prejudice the non-moving party or violate the Seventh Amendment. *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). Furthermore, "the decision to grant or deny bifurcation is a heavily fact-intensive analysis" and separate trials should not be ordered unless "clearly necessary." *Cadle v. City of Chicago*, 2015 WL 6742070, at *1 (N.D. Ill. Nov. 2, 2015); *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000).

4

*Monell* claims establish liability against a local governing body when the plaintiff can show that: (1) he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority; which (3) was the proximate cause of the injury. *See Levin v. Madigan*, 692 F.3d 607, 621 (7th Cir. 2012); *Ovadal v. City of Madison*, 416 F.3d 531, 535 (7th Cir. 2005).

## IV. ARGUMENT

### A. Discovery on the Individual Claims Has Shed Light on the Village's Unconstitutional Policies.

Through extensive discovery on Plaintiff's claims against the individual officers, it is abundantly clear that the individual officers' unconstitutional actions were a result of widespread policies, procedures, customs and/or practices of the Village of Romeoville, including failure to adequately train, supervise, and discipline police officers in the First Amendment rights of citizens to make complaints and submit FOIA requests, and failure to adequately investigate citizen complaints against police officers. Any time a citizen comes into the Romeoville police department to file a complaint, their name is ran through warrant databases, as confirmed by Defendant Michienzi during his deposition.

> Q: Sure. Aside from Mr. Prince and Miss Anderson, in your career in law enforcement have you ever had a situation where a citizen comes in to file a complaint and you end up running their name for warrants prior to them leaving the department?
>
> A: Yes, I have, sir.
>
> Q: How many times has that occurred?
>
> A: I run them all the time, but for warrants, they come back when you run a subject's name and date of birth or their driver's license through dispatch. But it probably would have happened, for specifically for warrants, a handful of times based off of certain -- certain circumstances.
>
> Q: And you said you run them all the time, what do you mean by that?

5

> A: Every time somebody comes in for a citizen's complaint, I try to gather as much information as possible. By doing so I let my dispatch know so it's on the call for service of who I spoke to. So it's done over the radio. And in turn they usually run them for warrant or run them through the LEADS system, which would come back for alerts or warrants.[1]

This policy, practice, or custom is intended to impede citizens' First Amendment rights, and chill the everyday citizen from coming to the Romeoville police department and filing a complaint. Additionally, it is clear from deposition testimony that it is also a policy, practice or custom to unnecessarily delay and stall citizens when they try to file a complaint, as well as generally not cooperate in allowing a citizen to file a complaint. Defendant Michienzi testified that "I originally told him no and then I was stalling for time to see if he had a warrant because I ran him through dispatch on my radio."[2] He further testified that "[w]e had a conversation. I stalled him for dispatch to run the warrant and continued to talk . . ."[3]

Deposition testimony also confirmed that there is a policy of suspecting any citizen that comes in to file a complaint has a warrant for their arrest.

> Q: Did you have any reason to believe he might have a warrant out for his arrest?
>
> A: As -- as the conversation progressed, yes, one of the things that went by is that he may -- he may have a warrant.
>
> Q: And why were you suspicious that he may have a warrant?
>
> A: He wouldn't give me full information. He was being kind of evasive in his responses to some things.[4]
>
> * * * *
>
> Q: Knowledge you have what?

---

[1] *See* Ex. A, Michael Michienzi Deposition at 140:13-141:11, a highlighted excerpt of Michael Michienzi's deposition transcript is attached as Exhibit A.
[2] *Id.* at 108:1-3.
[3] *Id.* at 106:17-18.
[4] *Id.* at 84:5-13.

6

> A: That the subject he came in had a warrant. He was being evasive. He was being indifferent. He was refusing to give me it. And when I asked him for it and he eventually gave me it and I ran it.
>
> Q: He was refusing to give you what?
>
> A: All of his information.
>
> Q: Well, was he required to?
>
> A: He was not.
>
> Q Does that mean that he would have had a warrant out for his arrest because he didn't want to give you all his information?
>
> A: No, sir.[5]

In fact, as soon as Defendant Michienzi began his interaction with Mr. Prince, he immediately began planning to run Mr. Prince's names for warrants based on some unfounded "suspicion."

> Q: Do you remember verifying responses to interrogatory requests in this lawsuit?
>
> A: Yes, I do.
>
> Q: And you verified those under oath?
>
> A: Yes, I do.
>
> Q: In response to one question you responded, "I came to the lobby of the Romeoville Police Department to speak with him. As the encounter continued I became suspicious that plaintiff may have an active warrant and intended to continue to interact with him until I learned if that was true." . . . is that a truthful statement that I just read to you?
>
> A: Your question is is that a truthful statement?
>
> Q: Is that a truthful statement?
>
> A: It is a truthful statement.
>
> Q: So while you were at the station you became suspicious that plaintiff may have an active warrant and attempted to continue to interact with him until you learned if that was true?
>
> A: Correct.[6]

---

[5] *See* Ex. A, Michael Michienzi Deposition at 164:6-18.
[6] *See* Ex. A, Michael Michienzi Deposition at 167:3-168:3.

7

While there is conflicting testimony between Mr. Prince and Defendant Michienzi regarding if Michienzi provided Mr. Prince a blank complaint form the first time he came in (Mr. Prince denies Michienzi provided him with a blank complaint form), there is undisputed video evidence and testimony that Michienzi refused to provide Mr. Prince with a blank complaint form the second time he came in and asked to file a complaint.[7] Further, Romeoville Sergeant Matthew Bejgrowicz testified that if a citizen would not tell him who he wanted to file a complaint against, or if the complaint was to be filed against a certain officer, Bejgrowicz would refuse to provide the citizen with a simple blank complaint form:

> Q: If someone came in to the station and asked for a complaint form without stating who they wanted to lodge a complaint against, would there be any restrictions on who could give them the complaint form?
>
> A: I would have to verify that it was actually a complaint against a Romeoville police officer first, to make sure that they were not confusing our jurisdiction with somebody else's. And if they had informed me, yes, it is officer so-and-so and they were the rank of an officer, yes, I would be able to hand them a complaint form. If they wouldn't tell me who it was for, I can't assume it wouldn't have been for myself or for a higher ranking officer, so I would not provide them with a complaint form at that point.
>
> Q: And just to make sure I understand what you're saying, if you didn't know who the complaint was intended to be filed against, you would not then give them -- give a complainant a form?
>
> A: Correct.[8]

Simply put, there is an abundance of evidence of widespread unconstitutional policies and customs in the Village of Romeoville, including failure to adequately train, supervise, and

---

[7] *See* Ex. B, Video of Second Attempted Complaint; *see also* Ex. A, Michael Michienzi Deposition at 65:12-66:3; Ex. C, Matthew Bejgrowicz Deposition at 17:16-18:9, a highlighted excerpt of Matthew Bejrowicz's deposition transcript is attached as Exhibit C.

[8] Ex. C, Matthew Bejgrowicz Deposition at 22:14-23:10.

discipline police officers in the First Amendment rights of citizens to make complaints and submit FOIA requests, and failure to adequately investigate citizen complaints against police officers.

### B. The *Monell* Claim Can Stand Even If The Claims Against The Individual Officers Fail.

Defendants will likely continue to assert that bifurcation would be more convenient and economical because the claims against the individual officers necessarily govern the outcome of the *Monell* claims. This is not correct because Plaintiff's *Monell* claim is not derivative of his other claims. *See Whiting v. Wexford Health Sources*, Inc., 839 F.3d 658, 664 (7th Cir. 2016) ("Monell liability does not always require a finding of individual liability."); *Thomas v. Cook Cty. Sheriff's Dep't,* 604 F.3d 293, 305 (7th Cir. 2010) (An agency may "be held liable under *Monell*, even when [the individual defendants] are not, unless such a finding would create an inconsistent verdict."). Because the *Monell* claim would be tried regardless of the outcome of the individual claims, bifurcation of the *Monell* claim would create additional inefficiencies and costs for all the parties and the Court. Courts cannot obstruct a plaintiff from pursuing a potentially viable *Monell* claim if the claim is "distinct from the claims against individual defendants." *Swanigan v. City of Chi*., 775 F.3d 953, 963 (7th Cir. 2015). In fact, Magistrate Judge Susan E. Cox recently stated that the Court "does not believe that Plaintiff need necessarily prove that the Defendant Officers were individually liable for constitutional violations for Plaintiff to succeed on his *Monell* claims." *Bouto v. Guevara*, 10-CV-2441, 2020 WL 956294, at *3 (N.D. Ill. Feb. 27, 2020).

Separate from Plaintiff's claims against the individual officers, Plaintiff is also claiming that he suffered a constitutional injury as a result of the Village of Romeoville's actions. Undoubtedly, it is feasible a jury may determine that one officer violated Mr. Prince's constitutional rights but that another did not. The fact that one officer did not violate Mr. Prince's constitutional rights does not mean that a second officer cannot still be found liable for causing his

constitutional injury. Similarly, the fact that one officer may defeat a claim does not preclude liability against the Village. "[S]ituations may arise where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting municipal liability, but where no one individual's actions are sufficient to establish personal liability for the violation. *See Speer v. City of Wynne*, 276 F.3d 980, 986 (Ark. 2002) *citing Garcia v. Salt Lake County*, 768 F.2d 303, 310 (10th Cir. 1985); *see also DeFeliciano v. DeJesus*, 873 F.2d 447, 450 (1st. Cir.) (recognizing that a jury's verdict exonerating individual defendants for unconstitutional termination of a plaintiff's employment may be reconcilable with a verdict holding the municipal entity liable for the violation, cert denied, 493 U.S. 850, 110 S.Ct. 148, 107 (1989).

Additionally, courts in this circuit have repeatedly found that a municipality's liability is disconnected from the liability of individual officers when the officers assert qualified immunity as an affirmative defense. *See, e.g.*, *Rodriguez v. City of Chicago*, No. 17-CV-7248, 2018 WL 3474538, at *3 (N.D. Ill. July 19, 2018; *Thomas*, 604 F.3d at 304-5; *Est. of McIntosh v. City of Chicago*, No. 15-C-1920, 2015 WL 5164080, at *8 (N.D. Ill. Sept. 2, 2015). Qualified immunity is available as an affirmative defense to individual public employees, but not to municipalities. Consequently, it is possible that individual defendants may be found not liable under a qualified immunity defense even if they are found to have violated the plaintiff's constitutional rights, a finding which would not avoid a second trial on the *Monell* claim. *McIntosh*, at *8. Defendant Officers Michienzi and Dorsey have asserted qualified immunity as an affirmative defense in this case, thus the *Monell* claims against the Village of Romeoville are not dependent upon the claims against the officers. (*See* Dkt. 106, pg. 27).

Where an adverse resolution of the individual claims would not necessarily dispose of a *Monell* claim, bifurcating and staying the *Monell* claim would actually reduce efficiency by

delaying the ultimate adjudication of all of the plaintiff's claims. *Cadle*, 2015 WL 6742070 at *3. As established above, the municipality's liability here is not dependent on the liability of the officers, and the *Monell* claim may stand even if the individual claims fail. If, for example, the individual officers were found not liable due to qualified immunity, pursuit of the *Monell* claim would require an entirely new trial, which would include repetitive discovery proceedings. *See McIntosh*, 2015 WL 5164080 at *8; *see also Martinez v. Cook Cnty.*, 2011 WL 4686438, at *1-2 (N.D. Ill. Oct. 4, 2011) (denying bifurcation and stay of discovery in part because the presence of an affirmative defense of qualified immunity left open the possibility that the case would have to be relitigated on the *Monell* claims); *Medina v. City of Chicago*, 100 F.Supp.2d at 896 (N.D. Ill. 2000) (denying bifurcation partly because the individual officer raised a qualified immunity defense); *Clarett v. Suroviak*, 2011 WL 37838, at *1-3 (N.D. Ill. Jan. 3, 2011) (denying bifurcation because the qualified immunity defense raised the possibility of a second duplicative trial). Plaintiff is only asking that this Court allow narrowly tailored *Monell* discovery based on the Defendant Officers clear retaliation of Plaintiff after he attempted to exercise his First Amendment right to file a complaint.

    **C.**    **The Individual Officers Will Not Be Prejudiced By The Inclusion Of The *Monell* Claim.**

To the extent Defendants continue to claim that the Individual Officers will be unduly prejudiced by the inclusion of *Monell* claims, this argument is purely speculative. Plaintiff is seeking very narrowly tailored discovery that only relates to his First Amendment Retaliation claim and will not unduly prejudice any defendant. Additionally, any risk of some prejudice to the individual officers can be sufficiently and effectively mitigated through the use of limiting instructions, motions in limine, the Federal Rules of Evidence, and various other tried and trusted methods. *Cadle*, 2015 WL 6742070 at *3; *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 621. The

issue of avoiding prejudice at trial is better addressed by application of these rules than through bifurcation. At this point there is no real indication that the individual officers will be particularly prejudiced in this case, or that the prejudice cannot be minimized by limiting instructions to the jury.

**D.    Judicial Resources Will Not Be Unduly Drained As A Result Of Monell Discovery.**

Plaintiff is only seeking narrowly tailored *Monell* discovery on Plaintiff's First Amendment Retaliation claim. Plaintiff's requests will be a reasonable inquiry into how complaints are handled by the Village of Romeoville, both as a matter of policy and procedure. Specifically, Plaintiff is seeking the following *Monell* discovery:

- A corporate representative deposition pursuant to Federal Rule of Civil Procedure 30(b)(6);

- Deposition of a Village of Romeoville Dispatcher;

- Copies of any and all files related to citizen complaints against any officer of the Village of Romeoville Police Department during the last five years, including but not limited to the complaint, the nature of the complaint investigation into the complaint and the imposition of any discipline resulting from the complaint.

- Copies of any and all documents related to any citizen who was arrested the same day they filed or attempted to file a complaint against any officer of the Village of Romeoville Police Department.

- All documents, records, and electronically stored information pertaining to any agent/employee of the Village of Romeoville's knowledge, notice, awareness, belief, or reference that the Village of Romeoville or its police department has a deficiency or other concern with the policies and practices regarding complaints of officer misconduct, investigation of officer misconduct, supervision of officers, and/or discipline of officers.

- Any policies on complaint procedures not already produced.

12

## V.  CONCLUSION

For all of the reasons set forth above, this Court should vacate its prior ruling bifurcating *Monell* discovery, and permit discovery on the *Monell* claim to proceed.

Dated: October 24, 2022                    Respectfully submitted,

**AKERMAN LLP**

By: */s/ Jeffrey J. Mayer*
**Jeffrey J. Mayer**
Bar No. 06194013
jeffrey.mayer@akerman.com
AKERMAN LLP
71 S. Wacker Drive, 47th Fl.
Chicago, IL 60606

**Ryan C. Krone**
Bar No. 24085750
ryan.krone@akerman.com
AKERMAN LLP
1300 Post Oak Boulevard, Suite 2300
Houston, TX 77056
(713) 960-7394 – Telephone
(713) 960-1527 – Fax
*Admitted Pro Hac Vice*

**ATTORNEYS FOR PLAINTIFF**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHAQUILLE PRINCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19-cv-7265 |
| vs. | ) | |
| | ) | Judge Robert Gettleman |
| SGT. MICHIENZI #357, et al., | ) | |
| | ) | Magistrate Judge Susan Cox |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

  I hereby certify that on October 24, 2022, I electronically filed the foregoing ***PLAINTIFF'S MOTION TO VACATE RULING BIFURCATING MONELL DISCOVERY***, with the Clerk of the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which will send notice to the CM/ECF participants.

**TO:** G. David Mathues
   Michael D. Bersani
   *Attorneys for Defendant*
   HERVAS, CONDON & BERSANI, P.C.
   333 Pierce Road, Suite 195
   Itasca, Illinois 60143-3156
   Phone: 630-773-4774; Fax: 630-773-4851
   dmathues@hcbattorneys.com
   mbersani@hcbattorneys.com

                   By: */s/ Jeffrey J. Mayer*
                   **Jeffrey J. Mayer**
                   Bar No. 06194013
                   jeffrey.mayer@akerman.com
                   AKERMAN LLP
                   71 S. Wacker Drive, 47th Fl.
                   Chicago, IL 60606

                   **Ryan C. Krone**
                   Bar No. 24085750
                   ryan.krone@akerman.com
                   AKERMAN LLP
                   1300 Post Oak Boulevard, Suite 2300
                   Houston, TX 77056
                   *Admitted Pro Hac Vice*

                   **ATTORNEYS FOR PLAINTIFF**