# EXHIBIT C

Page 1

1          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
2                  EASTERN DIVISION

3

4   SHAQUILLE PRINCE,                )
                      Plaintiff;     )
5                                    )
                                     )
6                                    )
      -v-                            )No. 19-CV-7265
7                                    )
                                     )
8                                    )
                                     )
9   SGT. MICHIENZI, #357, et al.,    )
                      Defendants.    )
10

11

12   The Video-Recorded Deposition of MATTHEW BEJGROWICZ,

13   having been called by the Plaintiff for examination,

14   taken pursuant to all applicable Federal Rules of

15   Civil Procedure, conducted via Zoom videoconference,

16   and commencing at the hour of 9:33 a.m. on the 10th

17   day of May, 2022.

18

19

20

21

22   Reported By Beth Radtke, RPR, CRR

23   License No. 084-004561

24   Legal Videographer:  Peter Graves

Page 2

```
 1            APPEARANCES
 2
 3  AKERMAN, LLP
      By Ms. Megan Hussey
 4    Mr. Ryan C. Krone
      71 South Wacker Drive
 5    47th Floor
      Chicago, Illinois 60606
 6    (312)634-5700
      megan.hussey@akerman.com
 7    ryan.krone@akerman.com
      Appeared on behalf of the Plaintiff;
 8
 9  HERVAS, CONDON & BERSANI, P.C.
      By Mr. G. David Mathues
10    333 Pierce Road
      Suite 195
11    Itasca, Illinois 60143-3156
      (630)773-4774
12    dmathues@hcbattorneys.com
      Appeared on behalf of the Defendants.
13
             *****
14
15
16
17
18
19
20
21
22
23
24
```

Page 3

```
 1            INDEX
 2
 3  WITNESS                        PAGE
 4  MATTHEW BEJGROWICZ
      Examination By Ms. Hussey       5
 5  Examination By Mr. Mathues       26
      Further Examination By Ms. Hussey   30
 6
 7  EXHIBITS
 8  Exhibit 1  Video recording      16
      Exhibit 2  General order - citizen  19
 9      complaints
10      Exhibits Retained By Counsel
11             *****
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 4

```
 1      THE VIDEOGRAPHER:  Good morning.  We are
 2  going on the record.  The time is 9:33 on May 10,
 3  2022.
 4      Please note that this deposition is being
 5  conducted virtually.  Quality of recording depends on
 6  the quality of camera and internet connection of
 7  participants.  What is seen from the witness and
 8  heard on screen is what will be recorded.  Audio and
 9  video recording will continue to take place unless
10  all parties agree to go off the record.
11      This is Media Unit 1 of the video-recorded
12  deposition of Sergeant Matthew Bejgrowicz taken by
13  counsel for plaintiff in the matter of Shaquille
14  Prince versus Sergeant Michienzi, number 357, et al.,
15  filed in the United States District Court, Northern
16  District of Illinois, Eastern Division, Case Number
17  19-CV-7265.
18      My name is Peter Graves representing
19  Veritext Midwest, and I am the videographer.  The
20  court reporter is Beth Radtke from the firm Veritext
21  Midwest.  If -- I am not related to any party in this
22  action, nor am I financially interested in the
23  outcome.
24      If there are any objections to proceeding,
```

Page 5

```
 1  please state them at the time of your appearance.
 2  Counsel and all present, including remotely, will now
 3  state their appearances and affiliations for the
 4  record, beginning with the noticing attorney.
 5      MS. HUSSEY:  Hello.  My name is Megan
 6  Hussey.  I am attorney for the plaintiff, Mr. Prince,
 7  from Akerman law firm.  I am also accompanied by Ryan
 8  Krone today.
 9      MR. MATHUES:  David Mathues, my last name
10  has a weird spelling, it's M-A-T-H-U-E-S.  I am
11  representing the witness and the defendants, and I
12  have no objection to the remote reeding, including
13  the witness being sworn in remotely.
14      THE VIDEOGRAPHER:  Will the court reporter
15  please swear in the witness, and then counsel may
16  proceed.
17      (Witness sworn.)
18      MATTHEW BEJGROWICZ,
19  having been first duly sworn, was examined and
20  testified as follows:
21            EXAMINATION
22  BY MS. HUSSEY:
23      Q.  I think we're good to get started.
24      Could you please state your name for the
```

2 (Pages 2 - 5)

arrived.
Did Mr. Prince come into the station at any point during your shift that day?
A. Yes, he did.
Q. And did he come in of his own volition?
A. I believe so.
Q. And did you see Mr. Prince when he originally came in or...
A. Yes, I did. At some point I was notified he was up front.
Q. And were you notified why he was there?
A. I don't recall.
Q. So Mr. Prince came in of his own volition to begin with. After that, I will presume that he left of his own volition as well.
Do you recall a search taking place for Mr. Prince?
A. When I was present, there was no search.
Q. Okay. I am going to show you a video taken from that day, and we will see if I can share it correctly.
Can you see the video?
A. Yes, I can.
Q. Okay. Let's see if the audio will play.

(A video recording was played.)
MR. MATHUES: I'm not hearing it, Megan. I know there was talk at this point and I'm not hearing it.
MS. HUSSEY: Okay, thank you for letting me know before I went too far.
MR. MATHUES: I mean, I have the same video.
MS. HUSSEY: I think I may have found the button. Let's see.
(A video recording was played.)
BY MS. HUSSEY:
Q. Could you hear and see the video correctly that time?
A. Yes, I could.
Q. Okay. I'm going to stop sharing my screen for now.
Is that you in the video?
A. Yes, it is.
Q. And the other officer with you, is that Sergeant Michienzi?
A. It sounds like, and from the little bit you can see of him, I would say that's is Sergeant Michienzi.
MR. MATHUES: Megan, before we go too far,

do you want to either mark this video for the record or identify it by the Bates stamp numbers? You and the I both know what it is, but for purposes of clarity.
MS. HUSSEY: Yes, thank you. I will mark that as Exhibit 1.
BY MS. HUSSEY:
Q. Do you recall this conversation with Mr. Prince?
A. I did not recall it until yesterday when I met with counsel.
Q. And this conversation with Mr. Prince, is this around the time you just attested that Mr. Prince came in of his own volition?
A. Yes, it would have been.
Q. Okay. And what were you telling Mr. Prince in this video?
A. That I could not take a complaint for him against myself or another sergeant.
Q. Is there a department policy regarding what happens when someone wishes to file a complaint?
A. Yes, there is.
Q. And what is the policy?
A. That the supervisor would take and assist a

citizen with their complaint.
Q. And as you -- I think you mentioned, you reviewed the policy recently with your counsel.
Do you know the time previous to that that you would have most recently reviewed the policy?
A. No, I don't.
Q. Are you trained on the policy?
A. Yes, I am.
Q. How often are you trained on it?
A. My initial training when I was promoted to supervisor as a sergeant, and then any time thereafter revisions are made.
Q. And do you recall the last time you would have had training on it?
A. I do not.
Q. Is there any reason you cannot give someone a complaint form to fill out at a later point?
A. Yes.
Q. What reason is that?
A. If the complaint would be against a peer or a higher-ranking officer, or if the complaint was actually against myself.
Q. Can you -- if the complaint is against yourself or an equal or higher-ranked officer, can

Page 18

1  you accept a complaint?
2     A.  No.
3     Q.  So understanding that you cannot accept a
4  complaint, why can't you give someone a form to fill
5  out later, if you don't -- you're not accepting it?
6     A.  It would be for the purpose that I am not
7  that subject's supervisor or it's against myself, and
8  you do not want to have any notion of improprieties
9  taking this complaint.
10     Q.  To your knowledge, is the complaint form
11  available anywhere other than at the station?
12     A.  I believe it's available online.
13     Q.  Would it be accurate to say, then, that if
14  someone wanted to file a complaint against you, they
15  would have to come to the station when your
16  supervisor was there to collect the form?
17     A.  At the time of this incident, yes, that is
18  correct.  The law has changed here in Illinois,
19  however.
20     Q.  Okay.  And we'll just be focusing on the
21  time of the incident.
22     A.  Okay.
23     Q.  This is the case, even if they didn't --
24  hadn't finished the complaint form, they just wanted

Page 19

1  to get the piece of paper, the blank piece of paper?
2     A.  That they have to come here you're saying?
3     Q.  Yes.
4     A.  I think to obtain it, they can get it off of
5  the website for the village, or they can come here to
6  the station.
7     Q.  Okay.  I'm going to share with you what I
8  will label as Exhibit 2, which is the general order
9  regarding the citizen complaints.
10        Can you see this?
11     A.  Yes, I can.
12     Q.  And I will show you the first page for
13  clarity, which is not labeled with the correct
14  exhibit number for this.
15        So this is the, as it says at the top,
16  general order regarding citizen complaints.
17        Have you seen this before?
18     A.  Yes, I have.
19     Q.  Is this the complaint policy that you
20  reviewed with -- prior to this deposition?
21     A.  With counsel?  Yes, it is.
22     Q.  And -- okay.  We are going to go to page 2.
23        So if we look at B here, is this large
24  enough, or would you like me to zoom in?

Page 20

1     A.  I can read it.
2     Q.  I can zoom in.
3     A.  That's better, thank you.
4     Q.  Absolutely.
5        So looking to B here, it says:  All
6  complaints made against the department or its members
7  will be investigated.  In-person complaints will, in
8  all possible cases, be taken by the on-duty
9  supervisor.
10        Do you understand -- how do you understand
11  "in all possible cases" to be interpreted here?
12     A.  That would be as in if I wasn't the person
13  being complained against or an officer of the same or
14  higher rank.
15     Q.  So would you classify those circumstances
16  you just mentioned being the person the complaint is
17  filed against, equal or higher rank as non-possible
18  cases, I suppose?  Cases where it is not possible?
19  Let me correct that.
20     A.  Yes.
21     Q.  And looking down a bit further at C, it
22  says:  When a citizen requests to file a complaint in
23  person, the supervisor on duty will do the following.
24  Provide the complainant with a verified complaint

Page 21

1  against a sworn peace officer form.  The complaint
2  will -- complainant will complete the form in his own
3  handwriting.  And then the sentence later, it says:
4  The form may be taken home and completed at a later
5  date.
6        Is there any reason, then, that you could
7  not just give this blank form to Mr. Prince in this
8  circumstance?
9        MR. MATHUES:  Object to asked and answered.
10        Sergeant, I'm just making an objection for
11  the record.  Go ahead and you can answer Ms. Hussey's
12  question to the best of your ability, unless I
13  instruct you not to answer, which I'm not doing.  So
14  go ahead and answer.
15        THE WITNESS:  Thank you.
16  BY THE WITNESS:
17     A.  Yes, I am not Sergeant Michienzi's
18  supervisor, and also a person that was possibly
19  making the complaint against, again, it would be
20  inappropriate for me to provide them with any type of
21  complaint that -- and I would refer them directly to
22  my supervisor, which would be, in my case, a
23  commander.  If they're not available, the deputy
24  chief or eventually the chief.

6 (Pages 18 - 21)

Page 22

BY MS. HUSSEY:

1 BY MS. HUSSEY:
2    Q.   Were you the supervisor on duty at the time
3 this video was taken, to the best of your
4 recollection?
5        MR. MATHUES:  Objection to form; vague.
6 BY THE WITNESS:
7    A.   I would have been the shift supervisor,
8 correct.
9 BY MS. HUSSEY:
10    Q.   And to your knowledge, were you the most
11 senior officer at the station on -- at this time on
12 December 21, 2018?
13    A.   Yes, I would have been.
14    Q.   If someone came in to the station and asked
15 for a complaint form without stating who they wanted
16 to lodge a complaint against, would there be any
17 restrictions on who could give them the complaint
18 form?
19    A.   I would have to verify that it was actually
20 a complaint against a Romeoville police officer
21 first, to make sure that they were not confusing our
22 jurisdiction with somebody else's.  And if they had
23 informed me, yes, it is officer so-and-so and they
24 were the rank of an officer, yes, I would be able to

Page 23

1 hand them a complaint form.
2        If they wouldn't tell me who it was for, I
3 can't assume it wouldn't have been for myself or for
4 a higher ranking officer, so I would not provide them
5 with a complaint form at that point.
6    Q.   And just to make sure I understand what
7 you're saying, if you didn't know who the complaint
8 was intended to be filed against, you would not then
9 give them -- give a complainant a form?
10    A.   Correct.
11    Q.   Okay.  I'm going to stop sharing this.
12        Recalling Exhibit 1, the video we watched,
13 would it be accurate to say that Mr. Prince appears
14 to be leaving the station at that time?
15    A.   It does appear as if he leaves, yes.
16    Q.   And is your recollection of that incident
17 that Mr. Prince left after being denied the complaint
18 forms?
19    A.   I believe so, yes.
20    Q.   And after Mr. Prince left, did you and
21 Sergeant Michienzi discuss him at all?
22    A.   I don't recall.
23    Q.   Did you discuss his initial arrest that you
24 conducted?  I'm afraid I don't have the date on me.

Page 24

1 You mentioned it was the first time that you had
2 interacted with Mr. Prince.
3    A.   I don't recall this incident at all, other
4 than what we watched on the video and what I've
5 talked about with counsel.
6    Q.   Okay.  And in the time since this incident
7 in December 2018, have you discussed Mr. Prince more
8 generally with Sergeant Michienzi?
9    A.   I don't believe so.
10    Q.   Have you spoken with anyone else about
11 Mr. Prince in the intervening period?
12    A.   Yes.  Yes, I have.
13    Q.   Other than counsel, have you spoken to
14 anyone?
15    A.   We went to trial for his initial arrest, it
16 was either last year or 2020.  I don't remember which
17 -- where the date falls.
18    Q.   And excluding that event, have you discussed
19 Mr. Prince regarding this particular complaint with
20 anyone?
21    A.   No.  No.
22    Q.   Have you seen any e-mails about this
23 incident that occurred on December 21, 2018?
24    A.   The only e-mails I have gotten about this

Page 25

1 were from counsel or your notice for the deposition.
2    Q.   And have you seen or sent -- sorry.
3        Have you sent any text messages regarding
4 this incident?
5    A.   No, I have not.
6    Q.   Have you seen any text messages regarding
7 this incident?
8    A.   No, I have not.
9    Q.   And at any point, were you asked to search
10 for or preserve documents related to this incident?
11    A.   No, I was not.
12    Q.   And have you searched your phone for any
13 text messages or e-mails related to the events?
14    A.   No, I have not.
15    Q.   Excepting the subsequent case regarding a
16 different incident, have you had any interactions
17 with Mr. Prince since December 21, 2018?
18    A.   No, I have not.
19    Q.   Have you had any interactions with Selina
20 Anderson?
21    A.   I don't even know who that is.
22    Q.   That's fair.
23        MS. HUSSEY:  I think that completes my
24 questions for the time being.  Counsel?

7 (Pages 22 - 25)

Page 30

1    Ms. Hussey does have the right to ask you
2 follow-ups if she wants to do that.
3    MS. HUSSEY:  Yes, I just have a couple, I
4 think two follow-up questions.
5        FURTHER EXAMINATION
6 BY MS. HUSSEY:
7    Q.  Mr. Bejgrowicz --
8    A.  Getting close.
9    Q.  Getting closer.
10    Mr. Mathues just asked you some questions
11 about your superior officer, who I believe you stated
12 would be a commander or deputy chief of operations;
13 is that correct?
14    A.  Yes.
15    Q.  And how often is a commander or deputy chief
16 of operations at the Romeoville police station?
17    A.  They are scheduled on a Monday through
18 Friday basis.  Their hours of actual work vary
19 depending on what they are doing that particular day.
20    Q.  Would it be accurate to say, then, that
21 usually either commander or deputy chief is at the
22 station on any given day at some point?
23    A.  Any weekday.  They're not Saturday or Sunday
24 kind of guys.

Page 31

1    Q.  That makes sense.  I think we all wish we
2 were like that.
3      And then just a final question:  Regarding
4 Mr. Prince's return as we saw in the video when you
5 spoke with him, do you recall, how did he look
6 physically during that interaction when he came in to
7 the station?
8    MR. MATHUES:  I would object to outside the
9 scope, but you can go ahead.
10 BY THE WITNESS:
11    A.  I don't recall how he looked.
12    MS. HUSSEY:  Okay.  I think that is all my
13 questions then.
14    MR. MATHUES:  We'll waive signature for this
15 one.  And as to --
16    MS. HUSSEY:  Sorry, I missed that.
17    MR. MATHUES:  I said we'll waive signature
18 for this one.
19    MS. HUSSEY:  Okay.
20    THE VIDEOGRAPHER:  This now concludes the
21 deposition.  We are now going off the record.  The
22 time is 10:09.
23    (Deposition concluded at 10:09 a.m.)
24

Page 32

1        CERTIFICATE OF
2     CERTIFIED SHORTHAND REPORTER
3    I, Beth Radtke, a Certified Shorthand
4 Reporter of the State of Illinois, CSR License No.
5 084-004561, do hereby certify:
6    That previous to the commencement of the
7 examination of the aforesaid witness, the witness
8 was duly sworn by me to testify the whole truth
9 concerning the matters herein;
10    That the foregoing deposition transcript was
11 stenographically reported by me and was thereafter
12 reduced to typewriting under my personal direction
13 and constitutes a true and accurate record of the
14 testimony given and the proceedings had at the
15 aforesaid deposition;
16    That I am not a relative or employee or attorney
17 or counsel for any of the parties herein, nor am I
18 interested directly or indirectly in the outcome of
19 this action.
20    IN WITNESS WHEREOF, I do hereunto set my hand at
21 Chicago, Illi                    , 2022.
22
23
                Beth Radtke, RPR, CRR
24              License No. 084-004561

9 (Pages 30 - 32)