UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHAQUILLE PRINCE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-7265 |
| | ) | |
| vs. | ) | Judge Robert Gettleman |
| | ) | |
| SGT. MICHIENZI #357, et al., | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' JOINT RESPONSE TO PLAINTIFF'S
MOTION TO RECONSIDER ORDER BIFURCATING *MONELL* DISCOVERY**

**INTRODUCTION**

Shaquille Prince and his female companion, Selena Anderson, walked into a police station even though both had open arrest warrants. Unsurprisingly, both ended up arrested. Much of what else happened that day is disputed[1] and the subject of the *individual* claims in this lawsuit.

This brief, however, concerns Prince's *Monell* claims, which this Court previously bifurcated. With fact discovery on the individual claims done, Prince wants the Court to reconsider its bifurcation order. But he makes the same arguments, and cites the same cases, that the Court has already found unpersuasive. That alone warrants denying his motion.

Prince tries to spin the discovery record in an attempt to justify reconsideration. These efforts fall flat. He omits that he and Anderson were arrested *pursuant to warrants*, which heavily shapes what type of *Monell* claim he could bring. His purported evidence of stonewalling, in context, is nothing more than testimony that Village policy is that complaints against officers

---

[1] Prince's motion cites his complaint for the alleged facts. But this is not a motion to dismiss where the facts in his complaint may be presumed as true. Suffice it to say that virtually every allegation in the complaint is disputed.

must be taken by someone of higher rank than the officer being complained about. His assertion that persons who file complaints against officers are targeted for background checks misrepresents the witness testimony, which is that persons who voluntarily come to the police station for a wide variety of reasons may have their name run through law enforcement databases. This is important for bifurcation purposes because it means that any First Amendment retaliation *Monell* claim will require evidence of many other situations beyond the incident that led to this case, and thus presents the problems of efficiency and prejudice that motivate bifurcation.

In sum, the Court's ruling on bifurcation was, and still is, correct. (Dkt. # 118, Minute Order, 12/02/21) Prince's renewed attempt for a costly fishing expedition should be denied.

I.  STANDARD OF REVIEW.

Regardless of how they are labeled, "motions for reconsideration are viewed with disfavor, and they are granted only in the rarest of circumstances and where there is a compelling reason." *Saccameno v. Ocwen Loan Servicing, LLC*, , 2018 WL 1240347, at *2 (N.D. Ill. Mar. 9, 2018) (citations omitted). They serve a limited function, to "correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (citations omitted). As the proponent of such a motion, Prince "bears a heavy burden." *Caine v. Burge*, 897 F. Supp. 2d 714, 716 (N.D. Ill. 2012). Such motions are not expressly mentioned in the Federal Rules of Civil Procedure, but courts in this district treat them as arising under Rule 54(b) and as part of a trial court's inherent authority to manage its own docket. *Caine*, 897 F. Supp. 2d at 716. Prince's motion, while not mentioned under Rule 54(b), should be seen as arising under that rule and subject to that standard of review.

As to the substantive issue, an order bifurcating claims is reviewed only for abuse of discretion. *Krocka v. City of Chi.*, 203 F.3d 507, 516 (7th Cir. 2000).

2

## II. Prince Misunderstands the Village Policies At Issue.

Prince says he is only seeking *Monell* discovery on his First Amendment retaliation claim, and contends the policy at issue is that persons who come to the Romeoville PD to file a complaint may have their name run through law enforcement databases, which includes a check for warrants. (Dkt. # 151, Pl.'s Mtn. to Reconsider p. 5)

But as Jahan Nurhussein, who works at the front desk and dealt with Prince and Anderson explained, there are "various reasons" why a person's name may be run through databases that check, among other things, for open warrants. (Ex. A, Nurhussein Dep. p. 33) It's "typical" for her to call in someone's name, and this happens "about three or four times a day on average." (*Id.*) These include persons who are picking up vehicles, to confirm they own the vehicle, or persons making a FOIA request, to ensure they are legally allowed to get this information. (*Id.* pp. 33–35) In other words, persons making complaints against officers are not singled out.

This fact, combined with three foundational legal principles, highlights the impracticality of changing course on bifurcation. One, asking for someone's identification does not implicate the Fourth Amendment at all, *see Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.*, 542 U.S. 177, 185–86 (2004), and neither does running someone's name to confirm their identity and determine if there are outstanding warrants.[2] Two, a pre-existing arrest warrant gives probable cause to arrest even if the warrant was discovered as a result of an unconstitutional stop. *Utah v. Strieff*, 579 U.S. 232, 242, (2016). And three, probable cause to arrest will defeat any claim of retaliatory arrest in all but the rarest of circumstances "where officers have probable

---

[2] *Detaining* a person while waiting for the results of such a search might raise a Fourth Amendment question, but is still usually permissible. *Hall v. City of Chicago*, 953 F.3d 945, 952–53 (7th Cir. 2020). But that is not the scenario here, as Prince and Anderson came to the police station voluntarily.

cause to make arrests, but typically exercise their discretion not to do so." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019). Fitting in to that narrow gap requires "objective evidence" that persons similarly situated to the plaintiff who did not engage in the same speech were not arrested. *Id.*

Here, because Prince had an open warrant, any claim for retaliatory arrest requires evidence that persons who came to the Village's police station for reasons other than to file a complaint against a police officer, and had an open warrant, were not arrested. This is true both of his individual claims and any *Monell* claim for a policy of running warrant checks. This makes discovery and trial on such a claim *far* more complicated that Prince's motion to reconsider lets on. Discovery and trial would necessarily implicate the actions of many other people, on many other dates, than the single incident in this case. This is precisely why bifurcation makes sense.

Prince also says that "new evidence" requires reconsidering bifurcation because discovery has shown evidence of officers stonewalling Prince on his complaints. What the full video actually shows—although Prince's brief never mentions this—is Sgt. Bejgrowicz telling Prince that if he wants to make a complaint against Bejgrowicz or Michienzi, he needs to talk to a Commander, and given the impending holiday, the first time such a person would be available is the day after Christmas. (Ex. B, Bejgrowicz Dep. p. 29; *see also* Ex. B to Pl.'s Mtn. to Reconsider, video, at approximately 22 seconds (stating "you have to come back and talk to a commander," who will be present "the day after Christmas" )) This is because Village policy is that complaints be taken by someone ranked higher than the person being complained about. (*Id.* p. 28; *see also* Ex. A, Nurhussein Dep. pp. 17–18; Ex. C, Michienzi Dep. pp. 29, 185)

Sgt. Bejgrowicz explained that this scenario has occurred between 5 and 10 times during the decade he has been a sergeant, including a time when someone came to him wanting to file a

complaint about a commander, and that person was referred to a deputy chief. (Ex. B, Bejgrowicz Dep. pp. 26, 28) There is nothing new, retaliatory, or unconstitutional about such a policy. Even if Prince contends otherwise, that issue raises very different questions than a fact dispute about what actually happened on December 21, 2018 between Prince and Michienzi.[3]

### III. Plaintiff Misrepresents the Discovery He Seeks.

Plaintiff says he is seeking "narrowly tailored" *Monell* discovery, and only on his *Monell* claim for First Amendment retaliation. (Dkt. # 151, Pl.'s Mtn. to Reconsider p. 12) This is not so. The list of discovery he wants ordered differs little from the discovery he wanted last year on all of his *Monell* claims and is neither narrow nor confined to his retaliation claims.

As a threshold matter, Plaintiff wants to depose a Village of Romeoville dispatcher. (*Id.*) As Plaintiff has already been told, the Village does not have dispatchers. Since 2017, the Village of Romeoville has been part of a consolidated dispatch center. (Ex. D, Kroll Aff. ¶ 2) This is the Laraway Communications Center, which operates under the auspices of Will County. (*Id.* ¶ 3) It is a separate government entity to whom Plaintiff is free to direct discovery if he wishes.

Next, there is nothing narrow about his request for a Rule 30(b)(6) deposition of a Village representative. That is a full scale fishing expedition for anything related to the Village and its policies and even beyond what Plaintiff sought in his earlier requests. It's notable that Plaintiff has *not* offered to limit the subject matter of such a deposition.

Plaintiff also wants all records related to all complaints against all Village officers for the last five years. (Dkt. # 151, Pl.'s Mtn. to Reconsider p. 12) *He asked for the exact same thing the first*

---

[3] To the extent Prince's *Monell* claim is based on the formal policy of how the Village takes complaints, there's another reason bifurcation serves judicial economy. Those policies have changed due to recent changes in Illinois law. (*See* Bejgrowicz Dep. p. 18; *see generally* Illinois HB 3653 (2021) (typically referred to as the SAFE-T Act)

5

*time around, when he was not purporting to limit his requests to a First Amendment retaliation claim.* (Dkt. # 115-2, Ex. B. to Defs.' Memo re Bifurcation, at ¶ 49) There is nothing "narrowly tailored" about what he now seeks. Put differently, his purported concession to limit *Monell* discovery to his First Amendment retaliation claim is no concession at all.

Indeed, his "narrowly tailored" *Monell* discovery is much broader than what is usually permitted even when the *Monell* claim is *not* bifurcated and *not* limited to a First Amendment retaliation claim. *Karney v. City of Naperville*, 2016 WL 6082354, at *13 (N.D. Ill. Oct. 18, 2016) (*Monell* discovery limited to factually similar incidents in the last three years). Prince's attempt to troll through all complaint files, on every subject, and his request for all documents related to policies and practices of internal officer discipline epitomize the kind of vague, broad requests that motivated bifurcation in the first place.

## IV. THE RULE 42 FACTORS STILL FAVOR BIFURCATION.

Plaintiff makes the same arguments, and relies on the same cases, that the Court found unpersuasive the first time around. For example, his motion to reconsider relies heavily on *Thomas v. Cook Cty. Sheriff's, Dep't*, 604 F.3d 293, 305 (7th Cir. 2010), *Bouto v. Guevara*, 2020 WL 956294, at *3 (N.D. Ill. Feb. 27, 2020), *Martinez v. Cook Cty.*, 2011 WL 4686438, at *1 (N.D. Ill. Oct. 4, 2011) *Est. of McIntosh v. City of Chi.*, 2015 WL 5164080 (N.D. Ill. Sept. 2, 2015), and *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 898 (N.D. Ill. 2000). (*See* Dkt. # 151, Pl.'s Mtn. to Reconsider pp. 9–11) His initial brief *also* relied on these same cases. (*See* Dkt. # 116, Pl.'s Br. in Opp. to Bifurcation pp. 5–7, 10–11) But "[a] motion for reconsideration is not an appropriate vehicle for relitigating arguments that the Court previously rejected." *Caine*, 897 F. Supp. 2d at

717. Moreover, the Defendants' initial reply explained why none of those cases fit the facts here. (Dkt. # 117, Defs.' Reply re Bifurcation pp. 1–3) Once again, nothing has changed.

### A. CONVENIENCE.

Plaintiff makes the same main argument on this factor he did before, that bifurcation will not promote convenience because he could lose his individual claims but prevail on his *Monell* claims. (*Cf.* Dkt. # 151, Pl.'s Mtn. to Reconsider pp. 9–10 *with* Dkt. # 116, Pl.'s Br. in Opp. to Bifurcation p. 7) But he still offers no realistic theory for how such a verdict could be reached. The Court correctly followed the weight of authority and rejected this argument the first time around. *See, e.g., Psarologos v. City of Chicago*, 2020 WL 919215, at *1 (N.D. Ill. Feb. 25, 2020) (granting bifurcation where "it was difficult to conceive of a scenario" where the outcome of the individual and *Monell* claims would be different). The case has always been a stark but straightforward credibility dispute between Prince and Sgt. Michienzi. If the jury believes Michienzi's account—including that he gave Prince a complaint form early on during the incident—Prince is not going to prevail on his individual claims or his *Monell* claims,[4] while if the jury believed Prince, he would prevail.

The only potentially plausible way for a different outcome on the individual and the *Monell* claims would be on the portion of Plaintiff's *Monell* claim dealing with the Village practice of running the names of people who come into the police station (as opposed to his claims about not being given a complaint form, Michienzi's alleged force and statements, and other topics). He would have to expand the inquiry to persons similarly situated to himself, e.g., they came to the station while having an open warrant, in order to satisfy. *Nieves*, 139 S. Ct. at 1727. But this

---

[4] Prince admits this fact is disputed. (Dkt. # 151, Pl.'s Mtn. to Reconsider p. 8)

would only push the "convenience" needed even further towards bifurcation. Digging into events involving potentially dozens of other persons, on many different dates would be anything but convenient for the parties in discovery or the court during trial.

### B. Prejudice.

Plaintiff's argument on this factor is an almost carbon copy of his earlier brief. The side-by-side comparison below shows this to be so.

| Motion to Reconsider | Earlier Motion |
| --- | --- |
| "Additionally, any risk of some prejudice to the individual officers can be sufficiently and effectively mitigated through the use of limiting instructions, motions in limine, the Federal Rules of Evidence, and various other tried and trusted methods. *Cadle*, 2015 WL 6742070 at *3; *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 621. The issue of avoiding prejudice at trial is better addressed by application of these rules than through bifurcation." | "Any risk of some prejudice to the individual officers can be sufficiently and effectively mitigated through the use of limiting instructions, motions in limine, the Federal Rules of Evidence, and various other tried and trusted methods. *Cadle v. City of Chicago*, 2015 WL 6742070 at *3; *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 621. The issue of avoiding prejudice at trial is better addressed by application of these rules than through bifurcation." |
| Dkt. # 151, Pl.'s Mtn. to Reconsider pp. 10–11. | Dkt. # 116, Pl.'s Br. in Opp. to Bifurcation, p. 11 |

To be clear, the problem is not copying and pasting from old briefs, which all lawyers do at times. The problem is that such parroting is disfavored and categorically inadequate in a motion to reconsider. *Caine*, 897 F. Supp. 2d at 717. Given Prince's reliance on previously-rejected arguments on this factor, the defendants will simply note that their earlier brief cited numerous cases where courts also rejected those arguments and sided instead with the result this Court reached the first time around. (*See* Dkt. # 117, Defs.' Reply re Bifurcation (citing cases)). As Judge Hamilton wrote long ago, "limiting instructions might be used as an alternative, they are not likely to be a satisfactory solution in most cases." Hon. David F. Hamilton, *The*

*Importance and Overuse of Policy and Custom Claims: A View from One Trench*, 48 DePaul L. Rev. 723, 732 (1999).

### C. Judicial Economy.

This factor is primarily about additional burden on the courts through discovery time, delays, and added trial time. *Ackerman v. Allen*, 2017 WL 1536447, at \*\* 5, 6 (N.D. Ill. Apr. 27, 2017) (Castillo, C.J.) (granting bifurcation and noting its "many advantages"). Plaintiff suggests that this factor should weigh differently because he has narrowed his *Monell* discovery requests. That contention would pack at least some punch—if it were true. But as noted above, it is not. He is seeking the same broad, burdensome discovery he sought before: five years' worth of all documents related to all complaints against all Village police officers, regardless of the subject matter. His other requests are equally unlimited.

In addition, Plaintiff's contentions about his First Amendment retaliation claim only highlight why bifurcation remains the most efficient outcome. To the extent that Prince is focusing on alleged "retaliation" in the form of an allegedly bogus arrest, excessive force, and not getting a complaint form, those are the same issues that make up his individual claims. Bifurcation is more economical because resolving the individual claims will resolve the *Monell* claim without *Monell* litigation. But to the extent Prince is shifting his focus to a policy of Village personnel running the names of persons who come into the police station for a variety of reasons, the inefficiencies of trying such a different and sprawling claim along with the individual claims mean that in this scenario, judicial economy also favors bifurcation.

## CONCLUSION

The Court correctly rejected the Plaintiff's attempt for a costly fishing expedition before. Neither the facts nor the law has significantly changed. Neither should the outcome. In the alternative, since Plaintiff's discovery requests are anything but narrow despite his professions to the contrary, the Court should follow Judge Durkin's approach in *Karney* and limit any *Monell* discovery on his First Amendment retaliation claim to factually similar incidents within the last three years. *Karney*, 2016 WL 6082354, at *13.

Thus, for the reasons above, the Defendants respectfully ask that this Court DENY Plaintiff's motion to reconsider.

Respectfully submitted,

/s/G. David Mathues
MICHAEL D. BERSANI, # 06200897
G. DAVID MATHUES, # 06293314
*Attorneys for Michienzi and Dorsey*
HERVAS, CONDON & BERSANI, P.C.
333 W. Pierce Road, Suite 195
Itasca, IL 60143-3156
mbersani@hcbattorneys.com
dmathues@hcbattorneys.com
P: 630-773-4774

/s/ Sean M. Sullivan
Sean M. Sullivan
*Attorney for Village of Romeoville*
DEL GALDO LAW GROUP LLC
1441 South Harlem Avenue
Berwyn, IL 60402
sullivan@dlglawgroup.com
P: 708-222-7000; F: 708-222-7001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAQUILLE PRINCE, ) | |
| ) | |
| Plaintiff, ) | Case No. 19-cv-7265 |
| ) | |
| vs. ) | Judge Robert Gettleman |
| ) | |
| SGT. MICHIENZI #357, et al., ) | Magistrate Judge Susan E. Cox |
| ) | |
| Defendants. ) | |

**CERTIFICATE OF SERVICE**

    I hereby certify that on **December 12, 2022**, I electronically filed the foregoing ***Defendants' Joint Response to Plaintiff's Motion to Reconsider Order Bifurcating Monell Discovery,*** with the Clerk of the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which will send notice to:

TO:    Jeffrey J. Mayer                             Ryan C. Krone
          Akerman LLP                                  Akerman LLP
          71 South Wacker Drive                  1300 Post Oak Blvd.
          47th Floor                                        Suite 2500
          Chicago, IL 60606                        Houston, TX 77056
          jeffrey.mayer@akerman.com       ryan.krone@akerman.com

                                                             **/s/G. David Mathues**
                                                              MICHAEL D. BERSANI, # 06200897
                                                              G. DAVID MATHUES, # 06293314
                                                              *Attorneys for Michienzi and Dorsey*
                                                              HERVAS, CONDON & BERSANI, P.C.
                                                              333 W. Pierce Road, Suite 195
                                                              Itasca, IL 60143-3156
                                                              mbersani@hcbattorneys.com
                                                              dmathues@hcbattorneys.com
                                                              P:  630-773-4774