**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SHAQUILLE PRINCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19-cv-7265 |
| vs. | ) | |
| | ) | Hon. Sunil Harjani |
| SGT. MICHIENZI #357, *et al.*, | ) | |
| | ) | Magistrate Judge Holleb-Hotaling |
| Defendants. | ) | |

## DEFENDANTS' MOTIONS *IN LIMINE*

NOW COME the Defendants, the VILLAGE OF ROMEOVILLE, by and through its undersigned counsel SEAN M. SULLIVAN of DEL GALDO LAW GROUP LLP, and MICHAEL MICHIENZI, and THOMAS DORSEY, by and through their respective attorneys, MICHAEL D. BERSANI and G. DAVID MATHUES of HERVAS, CONDON & BERSANI, P.C., and pursuant this Court's Minute Orders of December 17, 2024 (Dkt. # 257) and July 30, 2025 (# 282), submit the following motions *in limine*.

## INTRODUCTION

A motion in limine seeks a pretrial ruling that the jury may not hear certain evidence that is "clearly inadmissible on all possible grounds." *Anglin v. Sears, Roebuck & Co.*, 139 F. Supp. 2d 914, 917 (N.D. Ill. 2001). Such motions are not mentioned in the Federal Rules of Evidence or of Civil Procedure but are part of a federal court's inherent authority to manage trials. *Euroholdings Capital & Inv. Corp. v. Harris Tr. & Sav. Bank*, 602 F. Supp. 2d 928, 934 (N.D. Ill. 2009). And, while unexpected events at trial can justify reconsidering a ruling on a motion in limine, such requests for reconsideration must be raised outside the jury's presence. *See id.*

For the sake of efficiency and convenience, Defendants have consolidated all their motions in limine into a single motion, and provided the following introductory list.

1. Motion in Limine No. 1: Motion to admit Plaintiff's prior felony convictions and his inaccurate sworn testimony in this case regarding his criminal history.

2. Motion in Limine No. 2: Motion to admit Plaintiff's history of domestic violence against Selena Anderson if Anderson testifies as a witness.

3. Motion in Limine No. 3: Motion to bar speculative and undisclosed testimony about lost wages and other economic damages.

4. Motion in Limine No. 4: Motion to bar speculative assertion that Prince's arrest in this case caused him to be incarcerated on other criminal cases.

5. Motion in Limine No. 5: Motion to bar reference to unrelated police misconduct.

6. Motion in Limine No. 6: Motion to bar generalized allegations of cover-up or "blue wall of silence."

7. Motion in Limine No. 7: Motion to bar testimony or evidence of insurance or indemnification.

8. Motion in Limine No. 8: Motion to bar testimony or argument regarding settlement.

9. Motion in Limine No. 9: Motion to bar "send a message" argument to the Village or law enforcement generally.

10. Motion in Limine No. 10: Motion to bar "golden rule" or "guardians of the community" argument.

11. Motion in Limine No. 11: Motion to bar "waited a long time for justice" argument.

12. Motion in Limine No. 12: Motion to bar testimony or argument about alleged violations of Village policies.

13. Motion in Limine No. 13: Motion to admit evidence of Prince's other arrests and lawsuits as relevant to Prince's alleged damages.

14. Motion in Limine No. 14: Motion to bar Prince from inflammatory racial rhetoric.

15. Motion in Limine No. 15: Motion to exclude improper character evidence against Defendants, including Defendant Michienzi's discipline and termination for sexual misconduct.

## DEFENDANTS' MOTION *IN LIMINE* NO. 1

## MOTION TO ADMIT SHAQUILLE PRINCE'S PRIOR FELONY CONVICTIONS AND FALSE TESTIMONY ABOUT THOSE CONVICTIONS

Prince answered a standard interrogatory about whether he had ever been convicted of a felony or a crime of dishonesty by stating "to the best of Plaintiff's recollection … none in the last five years." (Ex. 1, Pl.'s Amended ATI # 7, 01/11/22.) This evasive denial raises serious questions about Prince's veracity, his memory, or both. In fact, Prince had multiple felony convictions stemming from three different cases over that timeline.[1]

- On December 3, 2019, he was convicted on two counts of aggravated domestic battery and an additional count of domestic battery in DeKalb County under case 19 CF 094. (Ex. 2, VOR 2356 (certified copy of order and judgment, 19CF094.))

- On January 24, 2019, Prince was convicted of felony retail theft in DuPage County under case 2016 CF 2280 and sentenced to six months of incarceration. (Ex. 3, Criminal Sentence Order,2016CF02280.)

- On May 3, 2016, Prince pleaded guilty to a Class 3 felony of retail theft in Sangamon County, and was sentenced to probation. (Ex. 4, Certified Copy of Judgment; Ex. 5, Docket Sheet for case 2015 CF 0078)

Moreover, when questioned at his deposition about his criminal history, Prince repeated that he "did not recall" if he had any other felony convictions besides the DeKalb County case above and another since-overturned conviction. (Ex. 6, Prince Dep. Vol. II. pp. 264–65.) In other words, he again "forgot" about his felony theft convictions. The jury should hear about all these convictions and Prince's inaccurate testimony about his criminal history in order to fairly decide this case, which turns almost entirely on witness credibility.

In civil cases, a witness's felony convictions within the last 10 years "must be admitted." Fed. R. Evid. 609(a),(b). This mandate is subject only to Rule 403's balancing test. Fed. R. Evid.

---

[1] These are the only convictions Defendants have been able to prove. They have long suspected that Prince has additional convictions, some out of state, and continue to investigate this issue.

609(a)(1)(A). Convictions over ten years old are also admissible, but are subject to a higher "reverse 403" standard under which probative value must substantially outweigh the risk of undue prejudice. Fed. R. Evid. 609(b). The ten-year clock runs from either the date of conviction or release from confinement, whichever is later. *Id.*

Rule 609 reflects "the common-sense proposition that a person who has flouted society's most fundamental norms, as embodied in its felony statutes, is less likely than other members of society to be deterred from lying under oath in a trial by the solemnity of the oath, the (minuscule) danger of prosecution for perjury, or internalized ethical norms against lying." *Campbell v. Greer*, 831 F.2d 700, 707 (7th Cir. 1987).

Courts look to five factors articulated in *United States v. Mahone*, 537 F.2d 922 (7th Cir. 1976), to determine if a conviction is admissible. These are: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004). These factors may apply differently in a civil case, but the general approach is the same. *Lyles v. Gambino*, 2019 WL 5654227, at *3 (N.D. Ill. Oct. 31, 2019).

These factors favor admission. *First*, the impeachment value is high. The January 2019 and May 2016 convictions are for theft, which is inherently more probative of honesty than convictions for many other felonies. *See, e.g., Barber v. City of Chicago*, 725 F.3d 702, 715 (7th Cir. 2013); *McGill ex rel. McGill v. Menard, Inc.*, 2013 WL 5253650, at *5 (N.D. Ill. Sept. 17, 2013) (citing cases). As to the domestic violence conviction, it was reversed on appeal last year. *People v. Prince*, 2024 IL App (2d) 230027. Thus, it cannot be used for impeachment purposes—only to show that Prince's interrogatory response was false. *Second,* while the convictions are less recent

than they would have been had this case gone to trial several years ago as expected, they are not that long ago. Perhaps more importantly, they are relatively close in time to the incident on which this suit is based. *Third*, the subject of those convictions is different from the facts here, which reduces the chance for unfair prejudice. The fourth and fifth factors weigh even more heavily towards admitting the felonies, because this case is *entirely* about witness credibility. When a party's testimony and credibility are absolutely central to a case, the probative value of his convictions is high. *See, e.g., United States v. Nururdin*, 8 F.3d 1187, 1192 (7th Cir. 1993) (holding that the credibility issue was central, and the felony were convictions properly admitted).

Beyond the standard *Mahone* analysis, it is Prince's own false testimony about his felony history that compels admitting these convictions. Saying, as he did in his interrogatory response and deposition answer, that he "could not recall" if he had any other felony convictions strains credulity past the breaking point and should be part of the jury's calculus in this case.[2]

---

[2] In the alternative, if some of the convictions themselves are not admissible, the Defendants should be able to expose on cross examination that Prince's sworn answers in discovery regarding his own criminal history were false . Former Chief Judge Guzman recently took this approach in a case where the plaintiff provided a similarly false interrogatory response. (Ex. 7, Dkt, # 99, Order, *Johnson v. Jelinek et al.*, 18-cv-7215, 02/13/23.)

## DEFENDANTS' MOTION IN LIMINE NO. 2

## MOTION TO ADMIT SHAQUILLE PRINCE'S
## HISTORY OF DOMESTIC VIOLENCE AGAINST WITNESS SELENA ANDERSON

"Proof of bias is almost always relevant." *United States v. Abel*, 469 U.S. 45, 52 (1984). That is why "[q]uestioning a witness' motives for testifying is precisely the type of inquiry permissible on cross-examination." *United States v. Thompson*, 359 F.3d 470, 479 (7th Cir. 2004). One well-recognized source of bias is threats or acts of violence. *Id.* at 478–79.

Here, there is an extensive history of domestic violence between Prince and his companion and partial witness to this incident, Selena Anderson. This history is highly relevant to the credibility of any testimony she may give. That history includes at least ███████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████[3]

To be sure, testimony about a pattern of domestic violence would prejudice Prince. But as the Seventh Circuit made clear in another case affirming admissibility of domestic violence evidence, that prejudice was not *unfair* because "the threat evidence was relevant to her [the DV victim's] credibility and offered a potential explanation for her inconsistent statements. *United States v. Jamison*, 635 F.3d 962, 965–66 (7th Cir. 2011). That reasoning applies with even more force here, where Prince did not merely *threaten* Anderson, but repeatedly struck her.

---

[3] ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████

## DEFENDANTS' MOTION IN LIMINE NO. 3

## MOTION TO BAR SPECULATIVE AND UNDISCLOSED
## EVIDENCE OF LOST WAGES AND OTHER ECONOMIC DAMAGES

If a party does not disclose evidence, they cannot use it at trial. Fed. R. Civ. P. 37(c)(1). Here, the Defendants sent Prince an interrogatory seeking information about his claims for economic damages in general, and lost wages in particular. Prince answered with non-responsive objections and nothing more. (Ex. 1, Prince's Amended ATIs, # 10.) He never supplemented that response, despite professing that he would. (*See id.*) Nor did he ever produce a single page regarding any alleged economic damages. Most importantly, Prince never provided any calculation of economic damages required by Fed. R. Civ. P. 26(a)(1)(A)(3). His Rule 26(a) disclosures are just a laundry list of categories of damages he will seek. (Ex. 11, Prince's Amended Rule 26(a) Disclosures.)

Failure to provide a calculation of *economic* damages or any documentary support means that he cannot seek such damages at trial. *Smith v. Garcia*, 2018 WL 461230, at *8 (N.D. Ill. Jan. 18, 2018)n 1983 case); *see also Hagen v. BeneTek, Inc.*, 714 F. Supp. 3d 1075, 1091 (E.D. Wis. 2024); *Davis v. Harris*, 2006 WL 3513918, at *3 (C.D. Ill. Dec. 5, 2006). Prince has no excuse for this non-disclosure. He was represented for nearly two years by top-tier law firms but failed to make the required disclosures. He must be barred from seeking economic damages at trial.

7

## DEFENDANTS' MOTION IN LIMINE NO. 4

### MOTION TO BAR SPECULATIVE ASSERTIONS THAT PRINCE'S ARREST IN THIS CASE CASUED HIM TO BE INCARCERATED ON *OTHER* CASES

Prince spent no time in jail on the arrest which gave rise to this case. He was released on bond at the police station, and the criminal case was eventually dismissed. But he and his prior counsel have contended that Prince's arrest due to *this* incident caused him to spend time in jail on *other* criminal cases. The argument boils down to asserting that judges in other cases issued warrants, set higher bonds, or imposed longer sentences because of his arrest in this case.

Any argument of this nature should be barred as overly speculative. Damages cannot be based on speculation and conjecture. *See generally Platinum Tech., Inc. v. Fed. Ins. Co.*, 282 F.3d 927, 933 (7th Cir. 2002); *see also* COA 7 Pattern Jury Instruction 7.26. Attributing the actions of a judge in some other criminal case to Prince's arrest in this case requires speculating on what that other judge knew and why he or she did what they did in that other case and should be barred.

8

## DEFENDANTS' MOTION IN LIMINE NO. 5

**MOTION TO BAR REFERENCE TO UNRELATED POLICE MISCONDCUT**

Defendants move to bar any argument, evidence, innuendo, questions, or testimony regarding any allegation of misconduct by any police officer or agency other than the allegations of this case "because any evidence or argument concerning police misconduct in other cases not involving Plaintiff is irrelevant and unfairly prejudicial." *Fields v. City of Chicago,* 2018 WL 1652093, at *11 (N.D. Ill. Apr. 5, 2018). Thus, such evidence and argument are routinely excluded within the Seventh Circuit. *See, e.g.*, *Martin v. City of Chicago*, 2017 WL 2908770, at *6 (N.D. Ill. July 7, 2017) ("Unrelated allegations and incidents of police misconduct possess minimal—if any—probative value while carrying a great risk of prejudice to police officers"); *Martinez v. City of Chicago*, 2016 WL 3538823, at *11 (N.D. Ill. June 29, 2016) (same).

To be clear, this motion targets both *evidence* of misconduct and arguments, innuendo, and questions by counsel that mention or allude to other incidents of police misconduct. *See Fields*, 2018 WL 1652093, at *11 (excluding both *evidence* and *argument* regarding other police misconduct). The defendants are accountable for their own actions; they may not be made scapegoats for the alleged bad behavior of police officers nationwide. This Court should be especially vigilant in light of the current political environment and Prince's affinity for injecting irrelevant matters not before the court into his narrative.

## DEFENDANTS' MOTION *IN LIMINE* NO. 6

### MOTION TO BAR EVIDENCE OR
### ARGUMENT OF COVER-UP OR "BLUE WALL OF SILENCE"

Defendants seek to bar Plaintiff from any argument, evidence, innuendo, questions, or testimony related to "a 'code of silence,' 'blue wall,' or any claim of a cover up." *Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1028 (N.D. Ill. 2011) (granting such a motion and citing cases which did the same). Such generalized allegations are irrelevant, inflammatory, and merely a vehicle for Price to encourage a jury to associate the individual officers' actions with other, widely-publicized incidents of police misconduct. One may always question a witness about the witness' *own* biases and motives, but "generalized allegations — separate and apart from what may be true of the officers named as defendants here — are not helpful and are akin to impermissible propensity evidence." *Id.* Therefore, Prince should not be permitted to "use the term[s] 'code of silence' or 'blue wall' as those terms are highly prejudicial," or introduce evidence that police officers generally "seek to cover up misconduct in order to protect fellow officers." *Id.; see also Fields*, 2018 WL 1652093, at *10 (agreeing that "evidence about a general code of silence among [] police officers" would violate Rule 403).

10

## DEFENDANTS' MOTION *IN LIMINE* NO. 7

### MOTION TO BAR ANY TESTIMONY OR EVIDENCE REGARDING INSURANCE OR INDEMNIFICATION OF INDIVIDUAL OFFICERS

It is undisputed that the Village is obligated by statute to indemnify police officers, such as Michienzi and Dorsey, for any compensatory damages assessed in this case. Thus, the only reason to mention indemnification or insurance is to signal to the jury that "deep pockets" are available to pay any judgment. Such a signal defies federal law that evidence of indemnification is irrelevant, highly prejudicial, and rarely admissible. *See* Fed. R. Evid. 411. The Seventh Circuit typically prohibits juries from learning that defendants in §1983 suits are indemnified. *Lawson v. Trowbridge*, 153 F.3d 368 (7th Cir. 1998); *Patterson v. City of Chicago*, 2017 WL 770991, at *11 (N.D. Ill. Feb. 28, 2017). It should be excluded from this trial.

11

**DEFENDANTS' MOTION *IN LIMINE* NO. 8**

**MOTION TO BAR TESTIMONY OR ARGUMENT REGARDING SETTLEMENT**

The Federal Rules of Evidence specifically exclude evidence of settlement (absent exceptions not applicable here). Fed. R. Evid. 408. Thus, any reference to settlement should be excluded. The Court should specifically caution Prince on this point and vigorously enforce it at trial. Prince has already shown that he will disclose settlement negotiations, even when he promised a judge that he would keep them confidential. (*See* Dkt. # 211, Pl.'s Mtn. to Reconsider Att'y Withdrawal, p. 3, 02/23/24).

**DEFENDANTS' MOTION *IN LIMINE* NO. 9**

**MOTION TO BAR
ANY REFERENCE TO PUNISHING OR SENDING A MESSAGE TO THE
VILLAGE OF ROMEOVILLE, OR TO LAW ENFORCEMENT GENERALLY**

Prince should be barred from making any argument that the jury should "send a message" to the Village of Romeoville, or law enforcement generally, with its verdict. Sending a message, or punishment, cannot form the basis for any damages other than *punitive* damages. As a matter of law, Prince cannot recover punitive damages from the Village. *See* 745 ILCS 10/2-102; *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Accordingly, he should not be allowed to imply to the jury that punishment can serve as a legitimate basis for an award against the Village or law enforcement generally. Any such implication would be unfairly prejudicial under Rule 403 and for that reason is routinely barred. *See, e.g.*, *Fields,* 2018 WL 1652093, at *13 (granting motion to bar "send a message" type arguments against municipality); *Patterson*, 2017 WL 770991, at *5 (ruling that a plaintiff "may not argue that jurors should send a message to the City" or to the "police department"); *Fuery v. City of Chicago,* 2015 WL 13682033, at *4 (N.D. Ill. Nov. 30, 2015) (same).

Lest their argument be misunderstood, Defendants reiterate that this motion is directed at "send a message" arguments to the Village of Romeoville (or any subdivision thereof), or law enforcement in general. Plaintiff *may* ask the jury to "send a message" to the Defendants Michienzi and Dorsey. *See* Seventh Circuit Pattern Jury Instructions, Instruction # 7.28, "Punitive Damages," available at http://www.ca7.uscourts.gov/pattern-jury-instructions/7th_cir_civil_instructions.pdf. There is a distinction, and it matters.

13

**DEFENDANTS' MOTION *IN LIMINE* NO. 10**

**MOTION TO BAR "GOLDEN RULE," OR
"GUARDIANS OF THE COMMUNITY" ARGUMENT**

A "golden rule" argument is any variation on the theme in which "the jury is asked to put itself in the plaintiff's position [and] is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *United States v. Teslim*, 869 F.2d 316, 327 (7th Cir. 1989) (internal citations omitted). "Golden Rule" arguments can take many shapes. Among them are asking a juror how much an injury would be worth to them or suggesting that jurors act or rule the way they would want if they were the plaintiff. *See Thomas v. Ritz, 2018 WL 1784473*, at *4 (S.D. Ill. Apr. 13, 2018) (barring "Golden Rule" argument and citing *Caudle v. D.C.*, 707 F.3d 354, 359 (D.C. Cir. 2013)).

A "guardians of the community" argument is any variation on a theme of appealing to the jury is somehow "tasked with protecting the public" and can do so through a verdict. *Smith v. City of Chicago*, 2025 WL 1744919, at *23 (N.D. Ill. June 24, 2025). This kind of argument is also an improper appeal to fear or to bias; it seeks to lure the jury into deciding the case based on something other than the facts and evidence presented. *Smith* rightly excluded such argument and its reasoning should be applied here.

14

**DEFENDANTS' MOTION *IN LIMINE* NO. 11**

**MOTION TO BAR "PLAINTIFF HAS WAITED A LONG TIME" ARGUMENT**

The incident on which this suit is based happened in December 2018. This trial will occur almost six years later. This is longer than average for a federal civil rights case. But it is largely due to two factors outside the Defendants' control: 1) the COVID pandemic and associated delays; and 2) Prince's cycling through multiple sets of attorneys and his repeated failures to appear in 2024, leading to the case being dismissed and then reinstated after a hearing.

Thus, Prince should be barred from any argument that he "has waited a long time for his day in court" or "has been waiting a long time for justice," or some similar phraseology that serves no purpose but to gin up sympathy. These kinds of appeals are routinely precluded. *See, e.g., Bryant*, 2017 WL 402982, at *4; *Fuery*, 2015 WL 13682033, at *4.

15

### DEFENDANTS' MOTION *IN LIMINE* NO. 12

### MOTION TO BAR TESTIMONY OR ARUGMENT ABOUT
### ALLEGED VIOLATIONS OF VILLAGE POLICIES AND POCEDURES

It is axiomatic that Section 1983 protects against violations of the federal constitution, not municipal law or departmental policies. *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). Whether Defendants Michienzi and Dorsey complied with every internal Village regulation or policy is irrelevant to whether they complied with federal and state law. Moreover, "evidence that a police officer violated a police department rule is highly prejudicial and distracting in a § 1983 case." *Patterson v. City of Chicago*, 2017 WL 770991, at *7 (N.D. Ill. Feb. 28, 2017). It is also confusing, distracting, and a waste of time, as the case can devolve into disputing whether some departmental rule was followed instead of whether the officer's complied with the Fourth Amendment. *See, e.g.*, *Valdez v. Lowry*, 2021 WL 5769533, at *14 (N.D. Ill. Dec. 5, 2021) (recognizing the risk for jury confusion and waste of time, and stating that any attempt to introduce such evidence faces "an uphill climb."). Any such evidence or argument should be excluded in this case, just as it has been in many other cases. *See, e.g.*, *Pryor v. Corrigan*, 2023 WL 1100436, at *35 (N.D. Ill. Jan. 30, 2023), *aff'd*, 124 F.4th 475 (7th Cir. 2024); *Jones v. City of Chicago,* 2017 WL 413613, at *4 (N.D. Ill. Jan. 31, 2017).

16

**DEFENDANTS' MOTION *IN LIMINE* NO. 13**

**MOTION TO ADMIT EVIDENCE OF PRINCE'S OTHER LAWSUITS
AND ARRESTS AS RELEVANT TO PRINCE'S ALLEGED DAMAGES**

Most of the time, courts take a dim view of the admissibility of a litigant's prior arrests and lawsuits. There is a genuine risk of prejudice and confusion. But here, this evidence may become relevant to both Prince's alleged damages for emotional distress and his credibility.

When deposed, Prince testified at length about his alleged emotional distress, his symptoms of depression and anxiety, his alleged PTSD (a condition with which he has not been diagnosed) and his fear of going out in public and of police officers. He claimed that all of these things resulted solely from the incident at issue in this lawsuit.

But Prince has filed several other lawsuits alleging police misconduct against *other* police departments, and in so doing, alleged that *those* incidents were the cause of great emotional distress and anxiety. *See, e.g.*, Dkt. # 83, Second Amended Complaint, 03/09/22 *Prince v. Ackland et al.*, 22-cv-5009 (N. D. Ill.) (suit against the City of DeKalb and its officers which was settled); Dkt. # 40, Amended Complaint, 01/24/22, *Prince v. Arndt et al.*, 20-cv-5847 (case against Downers Grove and Westmont and its officers, which was dismissed by Judge Kness for repeated failures to appear). Prince has also been arrested numerous other times. Some of those were the domestic violence incidents noted in Motion in Limine # 1. Others were for different crimes. For example, as of the date of filing, Prince had two felony theft cases out of Will County where there is a warrant for his arrest (and has been for months) due to failure to appear.[4]

---

[4] *See People v. Prince*, 2024CF000414 (Cir Ct. Will County); *People v. Prince*, 2024CF001608 (Cir Ct. Will County). The docket sheets are available online, but one must provide an email address and use a one-time login code sent to that email. *See* https://www.circuitclerkofwillcounty.com/Public-Access/Case-Lookup

17

This evidence is relevant to whether Prince's emotional distress is entirely due to this incident, as he claims, and also to whether Prince's testimony in this case about his damages is truthful. It should be admitted for that reason. Courts have recognized that prior arrests and lawsuits may be relevant as to damages. Courts so ruling have often reserved this issue, at least in part, for trial, finding that such evidence may be relevant depending on how the plaintiff testifies. *See Jones*, 2017 WL 413613, at *11 (so ruling and citing cases which did the same).

The Court should take the same path here. Put directly, it should be clear to all sides what will come through the door if Prince opens it through exaggerated or inconsistent testimony.

**MOTION IN LIMINE NO. 14:**

**MOTION TO BAR PRINCE FROM INFLAMMATORY
RACIAL RHETORIC AND ALLEGATIONS OF RACIAL BIAS**

"Appeals to racial passion can distort the search for truth and drastically affect a juror's impartiality." *Dyson v. Szarzynski*, 2014 WL 7205591, at *8 (N.D. Ill. Dec. 18, 2014). Moreover, any racial motivation is irrelevant to Prince's substantive claims. The standard for Fourth Amendment claims is *objective* reasonableness. (*See* Dkt. # 105, 2nd Am. Compl., Counts I, III, and IV.) Alleged racial bias is also irrelevant to Prince's claims for battery, conversion, intentional infliction of emotional distress, and First Amendment retaliation. (*See id.* at Counts II, V–VII.) The risk of unfair prejudice from "race based smears" is high and obvious, and this kind of testimony is regularly excluded. *Pryor*, 2023 WL 1100436, at *38; *see also Dyson*, 2014 WL 7205591, at *8.

Prince offers only the flimsiest basis for making racial bias an issue in this trial. He claims that while in front of the police station and before he was detained, Michienzi called him a monkey. It is telling that Prince recorded this part of the incident on his cell phone, and that comment is not audible.

Even so, Prince is allowed to testify to his version of events. The Defendants do not seek to preclude him from alleging that Michienzi made that "monkey" statement. But he should not be permitted to go overbroad by repeating bringing up race, alleging racial bias beyond what the evidence allows, appealing to racial prejudice, or making "race-based smears, too, such as the statement that he faced an encounter with "angry white police officers." *Pryor*, 2023 WL 1100436, at *38.

**DEFENDANTS' MOTION *IN LIMINE* NO. 15**

**MOTION TO BAR IMPROPER CHARACTER EVIDENCE AGAINST DEFENDANTS**

Prince should not be permitted to inject unrelated disciplinary records or other suits against into this case. This evidence is irrelevant under Federal Rule of Evidence 401, and its risk of unfair prejudice substantially outweighs its probative value under Federal Rule of Evidence 403. *Patterson*, 2017 WL 770991, at *4 (excluding evidence of three prior suits against defendant officer as "minimally probative" but carrying "an unacceptable risk of unfair prejudice, jury confusion, and undue delay"); *see also Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1031 (N.D. Ill. 2011) (excluding evidence of lawsuits and internal affairs investigations and findings).

Such evidence is also improper character or propensity evidence under Federal Rule of Evidence 404. *Id.* at *11; *Martin*, 2017 WL 2908770, at *7 (granting motion *in limine* to preclude evidence, testimony, and questioning about prior misconduct under Rule 404). Moreover, such evidence would be based on hearsay, which further undermines its reliability. Judge St. Eve's *Patterson* ruling details the high standard required to ensure that evidence is indeed being admitted for non-propensity purposes in Rule 404, and not as character or propensity evidence. *Patterson*, 2017 WL 770991, at *3–4. Among other things, such evidence must be specific and not merely a re-framing of a propensity argument. *Id.* Finally, if more reason were needed to bar such evidence, delving into other lawsuits or disciplinary records would lead to "distracting mini-trials about the merits of those allegations." *Patterson*, 2017 WL 770991, at *4.

The main type of the evidence Prince seeks to admit concerns Michienzi's termination from the Village for alleged misconduct unrelated to this incident—or any other incident dealing with any member of the public. Rather, Michienzi's discipline issues related to personal, indeed, to put it more bluntly, sexual matters.

20

Mr. Michienzi was suspended for 30 days without pay in 2000 for an incident "that had to do with allegations of sexual conduct on duty and phone issues." (Ex. 12, Amended Arbitration Award p. 16.) Four other people resigned due to the same incident; Michienzi received his suspension and signed a Last Chance Agreement. (*Id.* p. 17.)

More recently, Michienzi was investigated by the Village for looking at explicit photos of a female subordinate. The subordinate officer handed her cell phone to Michienzi to look at certain photos, but told him not to scroll further. He allegedly did so, saw nude photos of her, told her about them and kept scrolling and found yet another photo despite her protest. (*Id.* at pp. 7–8.) Michienzi was put on administrative leave for an internal investigation . The Chief of Police ordered Michienzi not to discuss the matter with any of his co-workers, but Michienzi allegedly disobeyed this order. (*Id.* pp. 12–13.)

The Village's investigator sustained the allegations. Michienzi was terminated. He appealed, but an arbitrator affirmed his termination on grounds of "harassing Officer M [the female officer] and disobeying his Chief's order not to discuss the investigation with anyone." *Id.* p. 31. The arbitrator found the serious nature of sexual harassment, coming only a few years after a long suspension for sexual misconduct, warranted termination. *Id.* pp. 29, 31.

That said, the arbitrator held that the Village did not prove a third charge it had brought against Michienzi, that he lied in the internal investigation. (*Id.* p. 30.) Because this charge was not "proven by the weight of credible evidence," it was not sustained. (*Id.*) This is important, because this charge, which goes more directly to credibility than the other two, is the charge which was not upheld.

There is no denying that the arbitrator's findings and the prior suspension do not reflect well on Micheinzi's character. But that is *precisely* why they should be excluded from this trial.

Common sense and numerous court decisions establish that allegations of sexual misconduct are extremely inflammatory and likely to provoke a verdict based on revulsion towards a litigant rather than the facts of the case. *Jones v. Sheahan*, 2003 WL 21654279, at *3 (N.D. Ill. July 14, 2003); *Earl v. Denny's, Inc.*, 2002 WL 31819021, at *3 (N.D. Ill. Dec. 13, 2002). Even when a party has been convicted of a sex crime, the courts take care to exclude the name of the crime and admit only the fact that of a felony conviction because "[a] juror would likely find it difficult to get past the heinous nature of Plaintiff's crime and listen to the testimony with an open mind." *Kincaid v. Sangamon Cnty.*, 2015 WL 13548179, at *1 (C.D. Ill. Sept. 11, 2015).

Here, if jurors hear that Michienzi was disciplined and later terminated for sexual misconduct, they will likely "find it difficult to get past" that fact and focus on the evidence before them. That may be an understandable human instinct. But it is antithetical to the purposes behind Fed. R. Ev. 403 and the very nature of a fair trial based on evidence in the courtroom.

All reference to Michienzi's sex-related discipline must be excluded. Unlike incidents of theft, fraud, or lying, sexual misconduct has little to no relevance to a person's credibility.

The only potentially admissible finding against Michienzi in the internal investigation was for making untrue statements to the Chief of Police in the internal investigation, and *that* finding has been overtured. Allowing those allegations into the trial would lead to a distracting and irrelevant mini-trial about the Village's investigation. The Village's Chief of Police and the Arbitrator came to different conclusions about Michienzi's truthfulness in the internal investigation. But it is the empaneled jurors who will made the final credibility decision in this case, and they do not need the input from either of those two parties.

Finally, other instances of alleged misconduct in the defendant officers' files should be excluded. Michienzi was also a defendant in two other lawsuits, *Khatib v. Michienzi*, 05-cv-6354

(N.D. Ill.); *Taylor v. Village of Romeoville*, 18-cv-0551 (N.D. Ill.). The first was an excessive force case from almost 20 years ago, and the second dealt with a traffic stop. Michienzi also received a verbal reprimand for missing crossing guard duty in 2018. Detective Dorsey received a verbal reprimand in 2016 for not turning in paperwork in a timely manner, and another verbal reprimand in 2019 for missing a CPR training class without excuse. All these incidents should also be excluded based on Rule 401 and Rule 403.

## CONCLUSION

WHEREFORE, Defendants request that this Court grant their motions in limine numbers 1 to 15, and any other relief the Court deems appropriate.

Respectfully submitted,

<u>/s/ Sean M. Sullivan</u>
SEAN M. SULLIVAN
*Attorney for Village of Romeoville*
Del Galdo Law Group LLC
1441 South Harlem Avenue
Berwyn, IL 60402
sullivan@dlglawgroup.com
P: 708/222-7000; F: 708/222-7001

<u>s/ G. David Mathues</u>
MICHAEL D. BERSANI, # 06200897
G. DAVID MATHUES, # 06293314
*Attorneys for Defendants*
HERVAS, CONDON & BERSANI, P.C.
333 W. Pierce Road, Suite 195
Itasca, IL 60143-3156
P: 630-773-4774     F: 630-773-4851
mbersani@hcbattorneys.com
dmathues@hcbattorneys.com

23

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHAQUILLE PRINCE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-7265 |
| | ) | |
| vs. | ) | Hon. Sunil Harjani |
| | ) | |
| SGT. MICHIENZI #357, et al., | ) | Magistrate Judge Holleb-Hotaling |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on **September 15, 2025,** I electronically filed the foregoing *Defendants' Motions in Limine* with the Clerk of the U.S. District Court for the Northern District of Illinois using the CM/ECF system, and I hereby certify that I have mailed with the United States Postal Service the aforementioned document to the following individual via Certified Mail:

TO:    Shaquille Prince
52 Center Avenue
Wheeling, IL 60090
morevacationtime@protonmail.com

**s/ G. David Mathues**
MICHAEL D. BERSANI, # 06200897
G. DAVID MATHUES, # 06293314
*Attorneys for Defendants*
HERVAS, CONDON & BERSANI, P.C.
333 W. Pierce Road, Suite 195
Itasca, IL 60143-3156
P: 630-773-4774    F: 630-773-4851
mbersani@hcbattorneys.com
dmathues@hcbattorneys.com

24